[No. 23745. Department Two. July 20, 1932.]

UNITED STATES FIDELITY & GUARANTY COMPANY, *Appellant,* v. THE PORT OF SEATTLE *et al., Respondents.*[1]

*Preston, Thorgrimson & Turner,* for appellant.

*Wm. H. Pratt* and *Hartman & Hartman,* for respondents.

TOLMAN, C. J.—Appellant, as plaintiff, brought this action against the Port of Seattle to recover the re-

[1]Reported in 13 P. (2d) 33.

serve fund withheld by it under a contract for the construction of certain improvements on its property, which contract had been entered into and been fully performed by one Torkelson. Other claimants to the fund were made parties defendant.

Plaintiff was the surety on the contractor's bond, and having paid, as it alleges, all the claims for labor, material and supplies which rightfully might participate in the reserve fund, and having taken assignments to itself of all such claims so paid and of Torkelson's interest in the fund, it sought by this action to establish its right to receive the whole of the fund, amounting to $2,752.60.

After a trial to the court on the merits, findings of fact and conclusions were made unfavorable to the plaintiff, and a judgment followed establishing as prior in right the claims of Queen Anne Sand Company in the sum of $586.75, with interest, attorneys' fees and costs, and the claim of William H. Pratt, guardian *ad litem* for F. J. Milton, a minor, in the sum of $1,166, interest, attorneys' fees and costs. The judgment further provided that, after payment of these claims in full, the balance of the reserve fund was awarded to the plaintiff. From this judgment, the plaintiff has appealed.

The facts are in the main stipulated, and none that we consider vital is seriously in dispute.

It appears that respondent Queen Anne Sand Company furnished material which was used in the work for which there is a balance due in the amount hereinbefore stated. After the material was delivered to the job, the sand company filed with the Port of Seattle a written statement of its claim in words and figures as follows:

"W. C. Bickford, Pres. R. M. Frost, Mgr.
 "Res. East 4920 Res. Mel. 4857
"C. E. Torkelson Seattle, Wash., October 24, 1930.
"7329 E. Marginal Way
 "In Account with
 "QUEEN ANNE SAND Co.
 "Fresh Water Washed
 "Plaster and Brick Sand
"Garfield 2743 Pier 40 3rd Ave. West and Fulton
 "Port Commission Dock

| | | | |
|---|---|---|---|
| "July | Account | $598.42 | |
| "Aug. 20 | By check | | $500.00 |
| "Aug. | Account | 330.67 | |
| "Sept. | Account | 157.44 | |
| | | "$1086.53 | |
| | "Balance due | 586.53 | |

"I hereby certify that this material was delivered to the above Consignee at Pier 40, Port Commission Dock, Seattle, Washington, —and that payment except as noted has not been received.

 "Signed—W. C. Bickford,
 "President."

Upon that statement being filed with the port commission and on the same day, the commission caused to be transmitted by mail a copy of the statement inclosed in a letter addressed to the appellant which reads:

"U. S. Fidelity & Guaranty Co. October 25, 1930.
"Mr. D. H. McCollister
"208 Marion Street
"Seattle, Washington
."Dear Sir:

"Herewith enclosed please find copy of claim from the Queen Anne Sand Co., in the amount of $586.53 for material in connection with the Torkelson paving

contract on Pier 40, Smith's Cove for the Port of Seattle. Very respectfully,
"PORT OF SEATTLE,
"By Matt H. Gormley, Auditor."

No other or further attempt was made by or on behalf of the sand company to comply with the statute, Rem. Comp. Stat., § 1161.

There was, however, evidence introduced from which it is argued that an estoppel should be found, but taken at its best, this evidence shows only that, after the expiration of the statutory time for filing claims against the reserve fund, the president of the sand company had a telephone conversation with an agent of the surety company in which the agent intimated that the sand company's claim would be paid shortly. Since the sand company did not rely or act upon this conversation to its damage, there can, of course, be no estoppel.

As to the Milton claim, it is admitted that there is due him from the contractor $1,166 for labor in hauling materials to the work by auto truck. After the completion of his work and within the statutory period, Milton filed with the port commission a written statement of his claim as follows:

"September 15, 1930.
"C. E. Torkelson, General Contractor, debtor to
"F. J. Milton of Tacoma, Washington
"683 hours use of truck and driver at $2.00 per hour (Use in construction of Salmon Sheds on Pier 40, Smith's Cove for Port of Seattle) $1,366.00
"F. J. MILTON (minor)
"By Chas. Milton
"1902 So. Ainsworth Ave.,
"Tacoma, Washington."

And thereafter the port commission mailed a copy of such statement to the appellant surety company in a letter which reads:

"Mr. D. H. McCollister October 20, 1930.
"208 Marion Street
"Seattle, Washington°
"Dear Sir:
 "Herewith enclosed please find copies of two claims in the amount of $1,856.30, Pioneer Sand and Gravel Co., and $1,366.00, F. J. Milton, for materials and use of truck and driver in connection with the Torkelson paving contract on Pier 40, Smith's Cove, for the Port of Seattle. Very respectfully,
"MGH :D Port of Seattle
"Encls. By Matt H. Gormley, Auditor."

There was paid on the Milton account after it was so filed, and long after the statutory time for filing claims had expired, by Torkelson, the contractor, the sum of two hundred dollars, and because the surety company countersigned Torkelson's check, it is argued that it thereby recognized and accepted the claim, or at least is estopped to deny it. There can be no estoppel, for the reason given in discussing the sand company's claim; and the mere fact that Torkelson gave his surety joint control of his bank account would not warrant the surety company in withholding its consent to the payment by Torkelson of any just claim arising out of the work, if he, Torkelson, had money in bank which could be properly used for that purpose. We are satisfied, therefore, that the rights of these claimants must each be determined from their written notices alone, and those notices being so similar, the two can be discussed together.

 The recent case of *Standard Accident Insurance Co. v. Interlocking Tile Corporation,* 166 Wash. 260, 6 P. (2d) 383, quotes from the statute, reviews all of our previous cases on this subject and definitely holds that a notice much more complete than is either notice in this case is wholly insufficient to comply with the statute. In that case, the first notice,

given three days after the work was commenced, did mention both the contractor and the bond, and evinced an intention to hold both. The second notice, given after the completion of the work, mentioned the contractor and referred to the fact that the work was covered by a bond; so that there was some basis there for an argument that, at least, an attempt had been made to comply with the statute law. In neither notice here under consideration is there the slightest intimation that the claimant looks to the surety or to the bond, or that he asserts a claim against anything or anyone save only the contractor, who was the person originally and primarily liable. Nor can the notices be aided by the action of the port authorities in mailing copies of these notices to the surety on the bond: First, because the port authorities were charged with no duty to so notify the surety and were clothed with no authority from the claimants to give such notice on their behalf; and second, because the act of the port authorities, if it meant anything at all, meant that the surety was thereby advised and given notice that neither claimant made any claim against the fund or the surety company under the statute.

Since the *Standard Accident Insurance Company* case fully covers and determines the issues here involved, it seems useless to again review the authorities.

While we regret that honest men may fail to obtain their just dues, yet, since they failed to follow the course plainly marked out by the statute, we are powerless to relieve them from the results of their own negligence.

The judgment is reversed, with directions to dismiss the cross-complaint and enter judgment awarding to appellant the fund so held in reserve.

HOLCOMB, BEALS, MAIN, and MILLARD, JJ., concur.