[No. 28633. Department Two. September 1, 1942.]

FIDELITY & DEPOSIT COMPANY OF MARYLAND, *Appellant,*
v. HERBERT H. CONWAY, INC., *et al., Defendants,*
GENERAL ROOFING COMPANY, INC., *et al.,*
*Respondents.*[1]

[1]Reported in 128 P. (2d) 764.

*Loren Grinstead* and *Arthur Grunbaum,* for appellant.

*Dan E. Hardin,* for respondent General Roofing Company, Inc.

*H. Jerard Imus,* for respondent school district No. 122.

JEFFERS, J.—This is an appeal by Fidelity & Deposit Company of Maryland (hereinafter referred to as Fidelity) from a decree of the superior court for Cowlitz county, entered on October 30, 1941. As appears from the notice, plaintiff appealed from that part of the decree granting judgment against plaintiff and in favor of defendant General Roofing Company in the sum of $1,247.74, with interest at six per cent from September 28, 1939, together with an attorney's fee of seventy-five dollars, and from that portion of the decree denying judgment in favor of plaintiff against school district No. 122, of Longview, Cowlitz county, Washington, for interest on the amount of the retained percentage withheld by the school district from the registry of the court.

On November 7, 1938, Herbert H. Conway, Inc.

(hereinafter referred to as Conway), as contractor, entered into an agreement with school district No. 122, for the construction of the R. A. Long gymnasium, designated as public works administration project No. Wash. 1574-F. The building was to be partially financed by funds from the PWA. Conway applied to Fidelity for a statutory performance bond. Such bond, conditioned as required by Rem. Rev. Stat., § 1161 [P. C. § 9727], was issued by Fidelity on November 8, 1938, in the sum of $86,854, and, after acceptance by the school district, was placed on file as a public record in the office of the secretary of the school district.

Conway did not complete performance of its contract, and on September 28, 1939, Fidelity was notified by the district that Conway had defaulted and abandoned the work, and that the district had terminated the contract. Fidelity declining to complete the contract, the building was finished by the district. November 28, 1939, the school district, by resolution, accepted the work as a completed project as of October 27, 1939. At the time of the approval of the final estimate, the retained percentage held by the district, as provided in the contract and required by Rem. Rev. Stat., § 10320 [P. C. § 9727-1], was $13,249.40.

Fidelity, as surety on Conway's performance bond, instituted this action against Conway, school district No. 122, and a number of creditors who had claims against Conway, among these creditors being General Roofing Company, Inc. The purposes of the action were to require the school district to pay into the registry of the court the retained fund held by it; to require all claimants against such fund or against the surety on the bond to establish their claims; to recognize Fidelity's claim against such fund for labor and material claims which it had paid; and to require the court to make an equitable disbursement of the funds.

No question is raised as to the right of Fidelity to bring this action. It alleged and proved an assignment from Conway to Fidelity, dated August 28, 1939, of all moneys due or to become due under the contract.

It is alleged in the complaint that the action was brought for the benefit of all the creditors of the contractor who had legal and enforcible claims, and it admitted its liability as surety upon the bond, to all claimants for labor, material, and provisions, who had complied with the statute and filed the proper statutory notice. It is further alleged that various defendants, other than Conway and the school district, have claims which may be asserted against the fund and the bond.

We are not concerned in this action with any of the parties defendant other than General Roofing Company and the school district.

General Roofing Company filed an answer and cross-complaint, wherein it alleged that, on February 16, 1939, as subcontractor, it entered into a written agreement with Conway, as contractor, to perform certain work and furnish certain materials on the R. A. Long gymnasium; that it has fully complied with the agreement, but that the full contract price has not been paid. It was agreed that $1,247.74 was the balance due on the contract. It is further alleged that, although General Roofing Company did not file a claim in the exact form as required by Rem. Rev. Stat., § 1161, it had written a series of letters, which it claimed gave notice to the school board and Fidelity of its claim, and constituted a substantial compliance with § 1161, *supra*. It asked for judgment against Fidelity for the amount of its claim and interest.

The school district filed an answer and counterclaim, wherein it alleged that the retained percentage had to come from the PWA. It also alleged there were two

prior claims, one for overtime which the district had paid and which the PWA refused to satisfy, and one for demurrage, based upon the fact that the contract had not been completed on the date agreed and the contract provided for damages for such delay.

The trial court rendered judgment in favor of General Roofing Company and against Fidelity, finding that a sufficient notice had been filed by the Roofing Co. It denied Fidelity's claim against the school district for interest. The claim for demurrage was waived before trial, and the court denied the district's claim for overtime. Fidelity was given judgment against Conway.

The assignments of error are in admitting respondent Roofing Co.'s exhibit ten, which consisted of letters which form the basis for the statutory notice; in entering judgment in favor of the Roofing Co. against appellant surety and the retained percentage; and in refusing to charge the school district with interest at the legal rate on account of the retained percentage withheld by it from the date this suit was commenced.

The sole question presented on the appeal from the judgment in favor of General Roofing Company is: Did the Roofing Co. file a sufficient notice of its claim to meet the requirements of Rem. Rev. Stat., § 1161? It was admitted that the material was furnished, and the amount still unpaid was agreed upon. This controversy concerns the effect to be given the series of letters contained in exhibit ten.

The first letter, under date of August 12, 1939, was written by the Roofing Co. to the architect, Arch M. Torbitt, at Seattle, Washington. The material part of this letter reads as follows:

"For your information and as a matter of precaution, we are sending you a copy of our final invoice to Herbert H. Conway, Inc. on the R. A. Long Gym-

nasium and Swimming Pool, P. W. A. Docket No. Wn. 1574-F.

"We thought you might want this as we understand the job is completed and Conway's final payment is being held to pay a few outstanding bills."

A copy of this letter was sent to the superintendent of schools, at Longview.

On September 21, 1939, the Roofing Co. again wrote to Torbitt, at Seattle, asking him for the name of the bonding company which was finishing the job, so that the Roofing Co. could file a claim with the bonding company to protect its interest. Under date of September 23rd, the Roofing Co. was informed by Mr. Weatherby, resident architect, that the contractor's bond had been written by Fidelity & Deposit Company of Maryland, and that John Whalley, of Seattle, was its agent.

On September 25th, the Roofing Co. wrote a letter to John Whalley, which was forwarded to Loren Grinstead, who was actually handling the transaction for Fidelity. The letter was as follows:

· "We understand that you people wrote a bond for the Herbert H. Conway Company on the R. A. Long school. We have also been informed that you are going to be called on to finish the job and probably pay for some of it. We therefore wish to inform you that we have coming from Mr. Conway the sum of $1,281.71, and would like to know what action will be taken."

John A. Whalley & Co., under date of September 26th, acknowledged receipt of the above letter, and informed the Roofing Co. that Mr. Grinstead was looking after the matter, and that its letter had been sent to Mr. Grinstead, with the request that he reply thereto.

On October 11th, Mr. Grinstead wrote to the Roofing Co., acknowledging receipt of its letter of Septem-

ber 25th to Mr. Whalley, and giving to respondent Roofing Co. the following information:

"My information is that Mr. Conway went east leaving the job uncompleted and that the school board is finishing. I think it is about done and, in due course, the matter of getting the bills paid will have to receive attention.

"In the meantime, Mr. Conway has furnished to us a statement showing that his company owes you $1,264.73."

On October 18th, the Roofing Co. answered Mr. Grinstead's letter, explaining the difference between the amount claimed by it and the amount given Grinstead by Conway. This letter concluded as follows:

"Kindly let us know if there is any legal procedure to go through to protect ourselves on this claim. We will be very glad to hear from you on this."

A copy of this letter was sent to the secretary of the school district.

Mr. Grinstead, in answer to this letter, on November 21st wrote the Roofing Co., setting forth his interpretation of the figures. The letter concluded:

"With reference to the last paragraph of your letter, please follow the statutory procedure relative to claims against funds earned upon a job."

Rem. Rev. Stat., § 1161, provides that all persons mentioned in Rem. Rev. Stat., § 1159 [P. C. § 9724], shall have a right of action in his, her, or their own name or names on such bond for work done by such laborers or mechanics, and for materials furnished, or provisions and goods supplied and furnished, in the prosecution of such work or the making of such improvements;

"Provided, that such persons shall not have any right of action on such bond for any sum whatever, unless within thirty (30) days from and after the

completion of the contract with an acceptance of the work by the affirmative action of the board, council, commission, trustees, officer, or body acting for the state, county or municipality, or other public body, city, town or district, the laborer, mechanic or subcontractor, or materialman, or person claiming to have supplied materials, provisions or goods for the prosecution of such work, or the making of such improvement, shall present to and file with such board, council, commission, trustees or 'body acting for the state, county or municipality, or other public body, city, town or district, a notice in writing in substance as follows:

"To (here insert the name of the state, county or municipality or other public body, city, town or district):

"Notice is hereby given that the undersigned (here insert the name of the laborer, mechanic or subcontractor, or materialman, or person claiming to have furnished labor, materials or provisions for or upon such contract or work) has a claim in the sum of ........................ dollars (here insert the amount) against the bond taken from ............................ (here insert the name of the principal and surety or sureties upon such bond) for the work of ........................ (here insert a brief mention or description of the work concerning which said bond was taken).

(Here to be signed) ................................................................"

From the terms of the statute, it is apparent (1) that some notice must be filed with the proper body; (2) that it must be filed within at least thirty days from the completion of the contract and acceptance of the work; (3) that there must be some identification of the bond, surety, and work; and (4) that there must be some notice of an intent to claim against the bond.

The notice in this case, if any has been given, was timely made, and the only questions, therefore, are whether there was any notice, in the statutory sense, and, if so, whether it was properly filed.

Considering the latter question, the school district was the proper agency with whom the notice should

have been filed. Therefore, only those letters which were actually received by the district could, under any circumstances, be considered in determining whether or not the statute has been complied with. The other letters are important only as they tend to show the surety received notice and was not misled.

Section 1161, *supra,* has been the subject of judicial construction by this court, and from these cases a number of general rules may be drawn. First, some form of notice is an absolute condition precedent to the right of a creditor to claim against the surety on a performance bond, and if the complaint fails to allege some type of notice it is subject to demurrer. *Huggins v. Sutherland,* 39 Wash. 552, 82 Pac. 112; *Crane Co. v. Aetna Indemnity Co.,* 43 Wash. 516, 86 Pac. 849. We quote from the *Huggins* case, *supra*:

"This statute clearly makes the right to maintain the action upon the bond depend upon the notice provided for therein. This provision was for the benefit of the sureties on the bond. Their liability thereon ceased as to the class of persons designated, if no such notice or claim was *filed* within the time. It was therefore incumbent upon the plaintiff to allege and prove the fact that such notice was given within the time, because that fact was a necessary one to give a cause of action. . . . The complaint, not having alleged this fact, failed to state a cause of action, and the court should have sustained the demurrer." (Italics ours.)

Although notice is an absolute prerequisite, *a notice properly filed* has been held to be sufficient, if there has been substantial compliance with the statute. In *Strandell v. Moran,* 49 Wash. 533, 95 Pac. 1106, we held sufficient a notice which claimed in good faith more than the amount due, and which was signed "Andrew Strandell. By D. T. Winne, her attorney." In the cited case, the plaintiff was doing business through an agent, under the name of "A. Strandell, Agent," Andrew Strandell being the full name of the

person who so acted. The notice was signed by Andrew Strandell without the addition of the word "agent," and it was claimed this omission rendered the notice void. In the cited case, the opinion states that neither the city nor bondsmen were misled, and we held the notice was sufficient as a substantial compliance with the statute.

In *Herren v. Kansas City Casualty Co.*, 94 Wash. 77, 162 Pac. 17, we held that slight error in the names of the parties or in the description of the work was not fatal, if the surety and owner were not misled.

It may be noted here that the first difficulty confronting the court in applying § 1161, *supra*, undoubtedly is caused by the fact that the statute reads, " a notice in writing *in substance* as follows." It is almost impossible to place any concrete limitation upon the above term, and it therefore permits a court in a particular case to say that, while the notice does not absolutely comply with the form provided, under the facts in that case, the court believes there has been substantial compliance. The danger in the application of such a statute lies in the fact that courts may allow such substantial departure from the form prescribed, on the theory of substantial compliance, as to, in effect, nullify the statute. It is difficult to harmonize some of our own cases, although we believe that a close analysis of these cases will indicate that there are distinguishing features, which probably justify the result reached.

We have held that, if the notice is indefinite as to the particular bond against which the claim is made, the notice is insufficient. In *Carstens Packing Co. v. Empire State Surety Co.*, 84 Wash. 545, 147 Pac. 36, we stated:

"The controlling question before us is whether the notice of appellant's claim is sufficient to sustain its alleged cause of action. As above stated, the notice

sets forth three contracts, but specifies one bond only. There is no apparent method by which we can determine whether the supplies were furnished for all three of the contracts, for two, or for one, or what proportion was furnished to any one. The notice of claim says the supplies were furnished for the carrying on of 'said contract,' but fails to indicate which contract is meant. The bonds mentioned in the complaint were separate and were given to secure the performance of separate contracts."

See, also, *Maryland Casualty Co. v. Hill*, 100 Wash. 289, 170 Pac. 594, wherein we held a notice given by N. Nelson & Son and Grays Harbor Construction Company, similar to the notice given in the *Carstens Packing Company* case, *supra,* was insufficient.

In all of the cited cases, the determination has been based upon the theory that the primary purpose of the statute is to give the surety notice that the claimant will look to it for satisfaction. There have been a number of cases before this court where the form of the notice was not that provided by the statute, but rather some informal written statement. We are of the opinion those cases are determinative of the result in this case, and necessitate a reversal of the judgment entered herein, as to the claim of the Roofing Co.

The first case to which we desire to call attention, in which letters were claimed to have been sufficient notice under the statute, is *Robinson Mfg. Co. v. Bradley,* 71 Wash. 611, 129 Pac. 382. In the cited case, two letters were written by the claimant to the treasurer of the library board, the board being the public body contracting as owner. The material part of the first letter was as follows:

" 'Enclosed herewith we hand you statement showing balance due of $1,098.20. We trust that you will favor us with an early remittance covering this amount as same is now due.' "

To this letter, the treasurer of the board replied,

claiming an error in arriving at the balance due, upon receipt of which claimant wrote the second letter, the material part of which is as follows:

" 'The statement as contained in your letter of March 14th showing balance of $858.50 on that account, is correct, and if you will send us that amount less freight expense bills we will hand you a receipt for the amount.' "

In the cited case, it was shown that the sureties received *actual notice* of the fact that claimant's bill was due and unpaid. We held that these letters could not be treated as a sufficient compliance with the statute, since there was no attempt to comply with the statutory requirement. We stated:

"The utmost that can be claimed for them [the letters] is that they inform the library board of the balance due from the contractor. There is no attempt to file a claim against either the building or the bond. . . . The letters contain no recognition of any statutory requirement, nor any attempt to comply therewith."

In regard to actual notice to the surety, we stated: "We therefore hold that actual notice cannot take the place of this written statutory notice."

The above case was followed by *Rodgers v. Fidelity & Deposit Co. of Maryland,* 89 Wash. 316, 154 Pac. 444, wherein the following letter, actually filed with the state board of control, the proper board with which the notice should have been filed, was claimed to substantially comply with the statute:

" 'Enclosed we hand you statement of unsettled balance due us on labor and material furnished T. Strauser & Son for The Northern Hospital for Insane, Sedro-Woolley, Wash. that proper precautions may have been taken.

" 'P. S. Will you please let us know with what Bonding Company this company is bonded on this work.' "

In the course of the opinion, we stated:

"It seems equally plain to us, from the language of the statute above quoted [§ 1161], that the claimant must, as a prerequisite of his right to sue the surety upon the bond, state in his notice, at least in substance, that he 'has a claim . . . against the bond,' designating it by naming the principal and sureties; and that it is not sufficient that he make a statement in his notice of claim that amounts to nothing more than a statement of his claim against the contractor, his original debtor."

We also call attention to our discussion, in the cited case, of the cases of *Strandell v. Moran*, 49 Wash. 533, 95 Pac. 1106, and *Cascade Lbr. Co. v. Aetna Indemnity Co.*, 56 Wash. 503, 106 Pac. 158.

In *Standard Accident Ins. Co. v. Interlocking Tile Corp.*, 166 Wash. 260, 6 P. (2d) 383, two letters were written by claimant to the county commissioners of Snohomish county, who, under the statute, were the proper parties with whom the notice should be filed. The first letter reads as follows:

" 'On May 14 we started work as sub-contractors under general contractor H. Gulbrandson, to instal the clay tile roof on the Detention Home at Everett, and if for any reason our account is not paid, we will hold Mr. H. Gulbrandson and his bond for payment of the same.' "

The second letter states:

" 'We enclose herewith statement of our account against H. Gulbrandson for labor and material furnished in connection with the roof on the Detention Home at Everett, as per plans by C. Ferris White.

" 'We understand that Mr. Gulbrandson's work in this building is covered by bond, and will take this means of informing you that this account is past due.' "

We held these letters insufficient to comply with the statute, first, because they had not been *filed*, being treated as ordinary correspondence by the county

auditor, there being no request by claimant that the letters be filed or preserved; and, second, because there was no declaration of intention to claim a right at present against the bond or the surety, but only a letter to the commissioners that, if the county didn't pay, then claim would be made against the bond, presumably, of course, by filing a notice *within the time, at the place, and in the form* required by the statute, which is *plain in its terms.* The following quotation from the cited case expresses our views at this time on the general application of the statute, and on its application to the facts in the instant case:

"The common indulgence of less than strict compliance with the statute, applicable in cases of this kind, must not by the process of extension be carried too far, lest destruction of the statutory rule itself be effectually accomplished. We are not disposed to so extend it in this case."

We also call attention to the fact that the cited case distinguishes the cases of *Strandell v. Moran, supra,* and *Cascade Lbr. Co. v. Aetna Indemnity Co., supra,* the two cases which we think seem to most strongly support respondent Roofing Co.'s position herein that the letters written in this case were sufficient to constitute substantial compliance with the statute.

In *U. S. Fidelity & Guaranty Co. v. Port of Seattle,* 169 Wash. 19, 13 P. (2d) 33, we again held that a letter written by the claimant to the port commissioner and filed by the commissioner, which letters contained merely a statement of the account, was not a sufficient notice, although a copy of the claim was forwarded immediately by the port commissioner to the surety. We stated in the cited case that the issues were determined by the *Standard Accident Ins. Co.* case, *supra.*

Applying to the facts in this case the general principles which we believe to have been established by the cited cases, it becomes evident that the Roofing

Co., although actually notified that it must comply with the statute, made no effort so to do. It is true that the surety has not been misled in any way, and that it had actual notice of the claim of the Roofing Co., but the right of the latter to recover against the surety is conditioned by the statute requiring notice, and although the notice, under some of our decisions, need not be in the exact statutory form, there must be at least substantial compliance.

The first letter sent to Torbitt, the architect, a copy of which was also sent to the superintendent of the Longview schools, was merely a statement of the amount due. There was no mention of an intent to look to the surety. It certainly could not be seriously contended that this letter was in any sense filed with the proper body.

The only other letter which might even be claimed to have been filed with the school district was the letter of October 18th, sent to Grinstead, Laube & Laughlin, Seattle, a copy of which was also sent to Mrs. Ruth Rossell, clerk of the district. This letter contained a statement of the amount due and a request for information as to the legal procedure, if any, necessary to protect the Roofing Co. on its claim.

Since these were the only letters actually received by the district, they are the only communications which in any sense could be considered as having been filed with the proper agency. Both of these letters, even if considered as filed, fail to give the required notice. Neither of them indicates in any way that the letters themselves should be treated as notice of a claim against the bond. Both of them are nothing more than informal communications between the parties.

It is essential that a claimant against a bond attempt to comply with the statute in a more substantial manner than merely the sending of informal statements

of amount due from the contractor and requests for information as to the steps necessary to protect the claimant's claim against the bond. Nor will the fact of actual notice be sufficient to supply the deficiency. The statute here involved is plain and unambiguous, and the form set out to be followed is simple. It would seem that much of the difficulty which has arisen because of the informal nature of the claimed notices could be avoided if a claimant in the first place would make the notice in the form of a *notice*, and then in a letter of transmittal request that it be filed.

We are of the opinion that the letters relied on in the instant case were insufficient to meet the requirements of the statute, in that they were neither actually filed with the district, nor did they contain a sufficient notice that claimant was asserting a present claim against the bond.

■■ The third assignment of error is based upon the court's refusal to charge the school district with interest on the amount of the retained percentage. By the terms of the contract, and as required by Rem. Rev. Stat., § 10320, the school district was entitled to, and did, retain fifteen per cent of the contract price.

While appellant in its complaint asked that the school district be required forthwith to pay into the registry of the court the retained percentage held by the district, and, if it failed so to do, that appellant have judgment against the district for the amount thereof, together with interest "from this date," which we assume to be about June 9, 1940, the money was not actually paid into court until 1941, $6,227.77 being paid on March 28, 1941, and $7,021.63 on June 14, 1941.

While Rem. Rev. Stat., § 10322 [P. C. § 9727-3], provides for the enforcement of claims against the reserve fund, and, generally, the contents of the answer to be filed by the public body ordering the work and the ef-

fect of filing such answer, the procedure followed by appellant in this case has been recognized.

It may be admitted that, at least at the time of filing its answer, which was on October 31, 1940, the school district was obligated to pay into court the retained funds. But the fact that such duty existed and was not complied with does not of itself provide a basis for allowing appellant to recover interest. The basis of appellant's claim is the asserted right of subrogation or exoneration. That the surety does have some interest in this fund cannot be denied. The fund has been held to be not only a trust fund for claimants, but also as security for the surety. We have held that, if the reserve fund is paid out by a city or a government agency prior to the expiration of the thirty day period in which claims against it may be filed, the surety is entitled to recover against the agency for the loss which it suffers as a result of the premature payment. *U. S. Fidelity & Guaranty Co. v. Montesano,* 160 Wash. 565, 295 Pac. 934.

A recognition of the surety's right to have the fund retained by the agency for the period of thirty days, and then applied to the proper lien claimants, does not establish the right of appellant to have the interest demanded. Interest is allowed as a measure of damages for the wrongful retention of money belonging to a claimant. To recover interest, it is essential that appellant establish its exclusive right to the fund. Even conceding that the failure to pay the money into court amounted to a breach of the duty of the district, there is still the question as to the right of the surety to recover. Appellant has cited *State ex rel. Pacific Bridge Co. v. Washington Toll Bridge Authority,* 8 Wn. (2d) 337, 112 P. (2d) 135, as authority for the allowance of interest. In our opinion, the cited case does not sustain appellant's contention. The facts show that all

materialmen, laborers, and supplies had been paid, so that there were no lien claims against the fund. Therefore, by the express terms of Rem. Rev. Stat., § 10321, [P. C. § 9727-2], a duty to pay the fund to the contractor arose upon the expiration of thirty days. It was clearly the contractor's money, and any retention would constitute an unlawful deprivation of the money.

In the instant case, there were many lien claimants asserting rights to the fund in question, so the exact amount which could be claimed by the surety was not definite. There existed at all times at least three claims, those of General Roofing Co., the United States, and Pacific Telephone & Telegraph Co. In addition, the district itself asserted the right to recover demurrage and an allowance for overtime paid. Even though demurrage was subsequently waived, and the overtime disallowed, nevertheless it cannot be said that the retained fund belonged to the surety to such an extent as to entitle it to interest for its retention.

Appellant's right as gained through subrogation to the claims of the creditors whom it paid, would be merely the right of the ordinary materialman, dependent upon the proper filing of notice against the fund. There is no showing that the claims which the surety paid were entitled to a prior claim to the fund as against other creditors. Nor is there any showing, prior to the disbursement by the court on proper proof by the appellant, as to the *pro rata* share to which appellant was entitled. We are of the opinion, therefore, that the trial court was justified in denying interest to appellant, since appellant had not established its sole and exclusive right to the funds until the time of actual disbursement by the court.

The judgment of the lower court is reversed as to General Roofing Company, with instructions to enter

judgment of dismissal of the claim of that company, in so far as appellant, Fidelity & Deposit Company of Maryland, is concerned. The judgment is affirmed as to school district No. 122.

ROBINSON, C. J., BEALS, STEINERT, and BLAKE, JJ., concur.

[1] Reported in 128 P. (2d) 773.