Argued February 9, reversed February 23, petition for rehearing denied April 4, 1956

## BOYER v. DAWSON ET UX

293 P. 2d 739
295 P. 2d 159

*H. T. Botts,* of Tillamook, argued the cause for appellants. With him on the brief was John W. Hathaway, of Tillamook.

*Geo. P. Winslow,* of Tillamook, argued the cause for respondent. On the brief were Winslow and Winslow, of Tillamook.

Before WARNER, Chief Justice, and ROSSMAN, LATOURETTE and PERRY, Justices.

## PER CURIAM.

This is an appeal by defendants from a decree foreclosing a mechanic's lien on their property in Tillamook county, Oregon.

Defendant M. L. Dawson entered into a contract with plaintiff, Charles A. Boyer, whereby Boyer was to build a barn for defendants for the sum of $7,200, less the value of certain lumber which defendants agreed to furnish for the construction of the barn. In his complaint, plaintiff alleges that the value of such lumber was $1,200.

The lien notice which plaintiff filed was for the full $7,200 with no allowance for the $1,200 credit. The crucial question is, does this overstatement in the lien of the amount due plaintiff void the lien? The answer is yes.

■ The rule laid down by the Oregon case is stated in *Davis v. Bertschinger*, 116 Or 127, 133, 241 P 53, as follows:

> "One of the defenses urged is that the lien is invalid because it does not contain 'a true statement of plaintiffs' demand after deducting all just credits and offsets' as required by Section 10195, Or. L. This provision has been considered by this court in numerous cases, all of which hold that where a lien claimant, in filing his claim of lien, puts on record a statement of his demand which he knows, or by the exercise of reasonable diligence would know, to be untrue, his right to a lien is lost. But, if he honestly makes a misstatement as to any item of his account in good faith and without negligence or carelessness upon his part and no prejudice results

to the owner of the property affected thereby, the courts will not, for that reason alone, hold the lien to be void: * * *."

See *West v. Wilson et al.*, 136 Or 262, 297 P 847 and *Drake Lumber Co. v. Paget Mortgage Co.*, 203 Or 66, 274 P2d 804.

■ In the instant case there was no honest misstatement concerning the account. Plaintiff knew when he filed the lien that defendant M. L. Dawson was entitled to a credit for the $1,200 represented by the lumber furnished. There is no legal excuse, in our opinion, for this misstatement.

Reversed.

### ON REHEARING

ON PETITION FOR REHEARING

*John W. Hathaway* and *H. T. Botts,* Tillamook, for appellants.

*Winslow & Winslow,* Tillamook, for respondent.

Before WARNER, Chief Justice, and ROSSMAN, LATOURETTE and PERRY, Justices.

ROSSMAN, J.

This cause is again before us, this time upon a petition for a rehearing. The grounds upon which the rehearing is sought are stated by the plaintiff-respondent as follows:

"1. That the Court erred in holding that there was any issue in this case about a fraudulent and dishonest intent of plaintiff in his failure to give credit for materials furnished.

"2. That this Court erred in holding that 'there was no honest misstatement concerning the account' relating to credits.

"3. That the Court erred in holding that 'Plaintiff knew when he filed the lien that M. L. Dawson was entitled to a credit for $1,200 represented by the lumber furnished.'

"4. That the Court erred in holding that 'There is no legal excuse * * * for this misstatement' about credits for materials furnished.

"5. That the Court erred in reversing the judgment and decree in favor of plaintiff."

In an effort to determine the merit of the contentions just stated, we reread the entire transcript of evidence, 173 pages long. In the brief which accompanies the petition for a rehearing, the petitioner states more than once that no contention was voiced in the trial court concerning the credit of $1,200 which was omitted from the lien notice. We are unable to concur in that contention. When the plaintiff was testifying upon cross-examination, a question was submitted to him by defendants' counsel which pertained to credits

upon the contract price. After the matter was further pursued, the plaintiff was asked:

"Q What kind of an arrangement did you have with Mr. Dawson?

At that point, plaintiff's counsel made the following objection:

"If the Court please, I don't know what he means by this. Maybe my objection is not timely, but we are going to object to any cross-examination or any evidence with reference to payments or credits or anything like that because of the condition of the pleadings."

The objection was not pressed and no ruling was made. The incident discloses that inquiries into credits were not postponed until the cause reached this court.

According to the plaintiff, he agreed to build the barn, which was the subject matter of the contract, for the sum of $7,200. The defendants contend that the contract price was $6,000. No memorandum of the agreement was prepared. Before the work was completed, the defendants voiced objections to the quality of the plaintiff's work, and when the plaintiff requested payment they refused the demand. That the defendants' refusal to pay was not without basis was indicated during the trial by witnesses produced by the plaintiff himself. One of them was a dairyman by the name of Orville Kellow for whom a barn had been built a short time prior to the one which the plaintiff constructed for the defendants. The agreement between the plaintiff and the defendants bound the plaintiff to duplicate the Kellow barn, with the exception that the defendants' should be 12 feet longer. Mr. Kellow was asked:

"Q After you inspected Mr. Dawson's barn

does it appear to you that Mr. Dawson's barn is as good a barn as your barn?

"A No, I don't think so."

Still another of the plaintiff's witnesses was asked by the plaintiff's attorney:

"Q Now, did you look over that concrete foundation there?"

meaning the foundation which the plaintiff had constructed for the defendants' barn. He answered in part:

"A I couldn't see that it was too bad, although you can't make firstclass concrete, in my estimation, out of river gravel scattered around here because it is soft."

About a year before construction of the barn was begun, the defendants had purchased from time to time lumber which, they believed, would be suitable in the building of the barn and had it delivered to the site of the contemplated structure. When the defendants let to the plaintiff the construction contract it was agreed that the plaintiff could help himself to the lumber, but that he should allow the defendants credit upon the construction price for the reasonable value of the lumber which he used. Most of the lumber which went into the structure was taken by the plaintiff from the piles which the defendants had assembled upon the premises. If the plaintiff kept any record of the lumber which he took from the defendants' stock he made no mention of it as a witness. He did not even disclose the number of feet which he used, although we assume that the quantity to which he helped himself can be determined since he allowed the defendants credit at the rate of $40 per thousand feet.

The above was the state of affairs when the plaintiff filed his lien notice. It sought a lien for $7,200

and, as we have indicated, gave the defendants no credit whatever for the lumber belonging to them that he used.

Our original opinion stated that the plaintiff knew when he filed the lien notice that the defendants were entitled to a credit of $1,200 and then, adverting to the fact that no credit was given, said: "There is no legal excuse, in our opinion, for this misstatement." At that point the decision cited *West v. Wilson,* 136 Or 262, 297 P 847, from which we now quote the following:

> "Under his own statement of fact, the greatest amount plaintiff would be entitled to according to his contract after deducting the admitted credit, would be $820, yet he filed notice of lien claiming $1826."

Since the record offered no explanation for that state of affairs, the decision concluded:

> "This was not a mistake but an intentional overstatement."

■ In the case at bar, the plaintiff gave no explanation whatever for his failure to have entered in the lien notice credit of $1,200. Even in this day of inflationary prices $1,200 is a sizeable sum. The parties to this controversy appear to be frugal individuals who do not deal daily in large sums of money. There is nothing in the record which could warrant a belief that when the plaintiff prepared his lien notice he had momentarily forgotten about the $1,200 credit; to the contrary, the facts seem to justify a belief that the plaintiff constantly had the credit in mind but was reluctant to grant it. As a witness, he berated the quality of the defendants' lumber and sought to attribute to it the ill conditions in the structure which had prompted the defendants' criticism and refusal of payment. Regardless of the numerous decisions which have sustained

or defeated lien notices which failed to contain a true statement of the account, the fact remains that the statutory demand is for "a true statement of his demand". ORS 87.035. That demand denies to the claimant any right to seek to improve his position by entering in his lien notice anything except "a true statement of his demand". We think that the words of *West v. Wilson,* supra, are applicable here—"This was not a mistake but an intentional overstatement."

The petition for a rehearing is denied.