Argued September 11, reversed and remanded October 24, 1962

# SCHOOL DISTRICT NO. 1 EX REL LYNCH CO. *v.* RUSHLIGHT & CO., HAMMOND ET AL

375 P. 2d 411

*W. J. Masters,* Portland, argued the cause for appellant. On the briefs were Masters & Masters, Portland.

*Preston C. Hiefield, Jr.,* Portland, argued the cause for respondents. With him on the brief were Jones & Brown and Eugene E. Feltz, Portland.

Before McAllister, Chief Justice, and Sloan, O'Connell, Lusk and Denecke, Justices.

DENECKE, J. (Pro tempore)

The Lynch Co., the appellant, brought an action for work performed for a subcontractor on the John Marshall High School, Portland. The litigation was brought in the name of School District No. 1, for whom the school was constructed, on the relation of Lynch Co. The defendants were Ross B. Hammond Co., the general contractor, General Insurance Company of America, their surety, and A. G. Rushlight & Co., the mechanical subcontractor for whom Lynch Co. did the sheet metal work.

The court directed a verdict in favor of Lynch and against Rushlight for the full amount, approximately $29,000. Rushlight did not appeal. The court granted a motion for involuntary nonsuit in favor of Hammond and General Insurance. The motion was granted on the ground that the plaintiff Lynch had failed to prove the giving of sufficient notice of claim as required by statute.

The action against the general contractor and his surety was brought pursuant to ORS 279.536. This

statute provides that an unpaid subcontractor has a right of action against a contractor and his surety if the subcontractor has filed a timely and sufficient notice of claim. The right of action is by reason of a bond executed by the general contractor as principal and by the surety. The form of the bond is prescribed by ORS 279.510. Such a bond is sometimes referred to as an Oregon Public Works Bond.

An unpaid laborer, materialman, or subcontractor is granted a right of action under such a bond

"* * * if he * * * has presented and filed a notice of claim, as prescribed in ORS 279.528, prior to the expiration of six months immediately following the acceptance of the work by the affirmative action of the public body which let the contract." ORS 279.526.

The contents of the notice and the action to be taken thereon are prescribed by ORS 279.528:

"(1) The notice of claim required by ORS 279.526 shall be presented to and filed with the Secretary of State or the clerk or auditor of the public body which let the contract.

"(2) The notice shall be in writing substantially as follows:

To (here insert the name of the public body):

Notice hereby is given that the undersigned (here insert the name of the claimant) has a claim for (here insert a brief description of the labor or materials performed or furnished and the person by whom performed or furnished; if the claim is for other than labor or materials, insert a brief description of the claim) in the sum of (here insert the amount) dollars against the bond taken from (here insert the name of the principal and surety or sureties upon the bond) for the work of (here

insert a brief description of the work concerning which the bond was taken).

——————————— (here to be signed)

"(3) The notice shall be signed by the person making the claim or giving the notice.

"(4) The notice, after being presented and filed, shall be a public record open to inspection by any person."

The notice relied upon was as follows:

"THE LYNCH COMPANY, INC.
Air Conditioning—Steel Fabrication
6000 N. E. Union Avenue
Portland 11, Oregon

February 9, 1961

"Registered.

"Portland Public School District
620 N. E. Halsey Street
Portland 12, Oregon

"Attention: L. J. Baker, Business Manager.

"Dear Sir:

"This letter is to inform you that we 'The Lynch Company, Inc.' of 6000 N. E. Union Avenue, Portland 11, Oregon, have an unpaid amount of $30,187.54 due us for labor and materials furnished to the John Marshall (Southeast) High School located at 3905 S. E. 91st Avenue, Portland, Oregon. This covers the period from October 24, 1958 to and including February 9, 1961.

"We are subcontractors to A. G. Rushlight & Co. of 3900 N. W. St. Helens Road, Portland, Oregon; who in turn are subcontracting from Ross B. Hammond Co. of P. O. Box 2111, Portland 4, Oregon.

"We furnished and installed the sheet metal work covering the Heating and Ventilation systems.

"This letter is in no way either a reflection or complaint on the above contractors but is sent to you to protect our interests in this matter. This is an undisputed account.

"Very truly yours,

THE LYNCH COMPANY, INC.
s/ J. R. LYNCH

J. R. LYNCH, PRESIDENT.

"jrl:ajb.
CC to R. B. Hammond Co."

This letter was received within six months after acceptance of the work. The question is whether the notice is substantially in the form required by statute.

The respondents contend that the letter was insufficient as statutory notice in the following particulars: (1) it was not presented and filed with the *clerk* of the public body; (2) it does not name the *principal* or *surety* on the bond; (3) it does not make a *claim* on the bond.

The Oregon notice of claim statute probably was patterned after the Washington statute.① It was adopted in Oregon in 1917. The form of notice required is almost identical. The only other state in the West having such a similar notice provision is Montana, and its law was definitely taken from Washington. *Kirkpatrick et al v. Douglas et al,* 104 Mont 212, 65 P2d 1169 (1937).

■ The interpretation placed upon the Washington law by the Washington court prior to Oregon's adoption of the law either governs the construction to be placed on it in Oregon or is highly persuasive. *Elliott v. Clement,* 175 Or 44, 50, 149 P2d 985, 151 P2d 739 (1944); *National Surety Corp. v. Smith,* 168 Or 265,

---

① RCWA 39.08.030.

324, 114 P2d 118, 123 P2d 203 (1942). However, the Washington court, both before and after 1917, has varied in the degree of compliance with the statutory notice provision which it required.

The lenient construction is illustrated by *Cascade Lumber Co. v. Aetna Indemnity Co.,* 56 Wash 503, 106 P 158 (1910). The notice in that appeal stated that the claimant had an unpaid bill and he would like to have it straightened out so he would not have to take legal action. The court held that even though the notice did not state that a claim was made against the bond, that certainly was the plain inference and therefore the notice was sufficient.

However, the latest Washington decision noted the past variations and went on to require almost literal compliance with the notice statute. *Fidelity & Deposit Co. v. Conway,* 14 Wash2d 551, 128 P2d 764 (1942). The claimant in the *Conway* case first sent the architect a copy of his final invoice to the general contractor and said that he understood that the general contractor's retainage was being held to pay outstanding bills. A copy of this letter was sent to the school superintendent. Later, the claimant wrote the architect asking the name of the surety so that the claimant could file a claim. The architect gave this information. The claimant wrote the surety and said he had a claim of $1,281 against the contractor and asked the surety what it was going to do about it. The surety wrote that in due course the matter of paying bills would receive attention. The claimant wrote asking the surety to let the claimant know if any legal procedure must be followed to protect his claim; a copy went to the school district secretary. The surety replied, follow statutory procedure.

The Washington court held that the notice was in-

sufficient; the letters were not "actually filed with the district;" the letter did not say that the claimant was asserting a present claim against the bond. The trial court in this case dissected the Washington decision and "measuring it [Lynch's letter] by the Washington decisions" concluded Lynch's notice was insufficient.

The Washington decisions, as stated, are not completely consistent and the *Conway* case, discussed immediately above, was decided 25 years after the Oregon statute was adopted. We believe the Washington decisions should be given weighty consideration, but should not be considered binding.

Decisions of the Michigan court have been cited to us as adopting a more lenient view than the *Conway* case. In *People, for use of Chasteen, v. Michigan Surety Co.*, 360 Mich 546, 104 NW2d 213 (1960), the applicable Michigan statute required notice of claim to the public body which in turn was required to give notice to the surety. The court held that direct notice to the surety without notice to the public body was sufficient. Chief Justice Dethmers, speaking for the court, stated:

> "* * * Under such circumstances [direct notice to the surety] the old rule of *Traves* should apply, that lack of strict compliance with the statutory requirement to serve notice on the administrative board stands as no defense to defendant, a paid surety, unless it shows resultant injury." 360 Mich at 549.

The Oregon statute only requires notice "substantially" as set out in the statute. Whether or not the appellant has substantially complied with the statute should be determined largely by deciding whether or not the notice given performed the function intended.

Public works bonds were required as substitutes for the security offered by mechanics' liens on land and improvements. No lien, mechanic's or otherwise, is enforceable against public property. ORS 23.160 (7); *Portland Lumbering etc. Co. v. School Dist. No. 1*, 13 Or 283, 10 P 350 (1886). In order to provide laborers, suppliers, and subcontractors on public works with security comparable to that afforded on private work by the right to a mechanic's lien, the general or prime contractor was made responsible for all bills incurred on the job. It was immaterial whether the bills were the general contractor's or those of a sub-subcontractor. In addition, the general contractor was required to secure a surety bond. The obligation of the surety was to secure the primary obligation of the general contractor to pay those bills.

Because the surety bond was substituted for the mechanic's lien some procedures used in perfecting mechanics' liens were required to be used in perfecting claims against surety bonds. A notice or claim of a mechanic's lien is a statutory requirement in order to perfect one's mechanic's lien. The statutes specify what should be contained in the claim. The usual statute requires that the claim contain a statement of account, the name of the landowner, the name of the person for whom the work was performed, and a description of the property on which the lien is claimed.[2]

Such claim of lien must be filed for recording with

---

[2] Generally, Oregon can be classified as a jurisdiction treating the contents of a claim of lien in a lenient fashion. Mechanics' Liens in Oregon, 29 Ore L Rev 308, 341-343 (1950). Because the filing of the claim of lien creates an immediate encumbrance on land, the court has been strict in holding insufficient claims in which are included a claim for non-lienable items, unsegregated from lienable items; Wiggins v. Southwood Park Corp. et al, 221 Or 61, 350 P2d 436; or claims overstated in amount, Boyer v. Dawson et ux, 207 Or 211, 293 P2d 739, 295 P2d 159.

the county recording officer. No provision is made for sending any copy to the landowner or general contractor. However, as it is made a public record, the filing gives constructive notice to all who might be concerned.

Notice the basic similarity between the claim of lien and notice of claim on a bond. The information required therein is generally the same. Notice to the person sought to be charged, the landowner or the general contractor and surety, is provided by constructive notice through public recording or filing. It is recorded or filed in the most appropriate public office. In the lien on land it is recorded where other instruments affecting land are recorded. In the bond claim it is filed in the public office from which the contract payments are disbursed.

The function of the lien claim and notice of bond claim is also generally similar. A prudent landowner who has entered into a construction contract withholds final payment to the contractor until the time for filing liens has expired. Then no payments will be made until an examination of the recorder's office reveals that no lien claims have been filed. If any lien claims are filed the balance will not be paid. The owner will pay the lien claimants out of the balance of the contract price or will require the debtor to pay as a condition to his receiving the balance. Only if the balance is insufficient and the debtor insolvent is the owner's real property jeopardized. A lender, looking to the property for security, or a prospective purchaser follows the same procedure.

■ In the case of public works bonds a percentage of the contract price is always retained by the public body from the general contractor for a period of time after the job has been completed. The general con-

tractor likewise retains a percentage of the sums due his subcontractors. These sums are called "retainages."

ORS 279.314 provides:

"* * * if the contractor fails * * * to make prompt payment of any claim for labor or services furnished to the contractor or a subcontractor * * * the school district * * * may pay such claim to the person furnishing the labor or services and charge the amount of the payment against funds due or to become due the contractor * * *."

The procedure followed by a public body and a general contractor is similar to that followed by a private landowner. If notices of unpaid bills are filed, the public body or general contractor will pay the bill out of the retainage or require the debtor, contractor or subcontractor to pay as a condition to his receiving the balance of the contract price. Only if the retainage is inadequate and the debtor is insolvent does the general contractor or his surety have to pay.[9]

The Washington statute provides that bond claims must be filed within 30 days after completion of the work. This is roughly comparable to the time within which mechanics' lien claims must be filed both in Oregon and Washington. Oregon, however, allows a notice of claim on a bond to be filed within six months.[10]

---

[9] The purpose of the notice provision in the Federal Public Works Bond statute is the same. United States v. Thompson Construction Corp., 273 F2d 873, 875 (2d Cir. 1959), cert den 362 US 951, 80 S Ct 864, 4 LE2d 869.

[10] This substantially longer time for filing as compared with the time for filing notices of lien and notices of Washington bond claims causes one to wonder if the Oregon statute was intended for the same purpose as notice statutes in other jurisdictions. This puzzlement is increased by the knowledge that when the statute

(Continued on page 351)

Withholding the retainage from a general contractor, and he in turn from his subcontractors, for six months after completion would work a hardship. It is usually not done.

The contract with the school district provided that the retainage of 7½ per cent would be payable 35 days after final acceptance. To attempt to insure that all bills would be paid prior to payment of the retainage, the contract provided that the school district could require an affidavit by the contractor that all bills were paid.

■ With this background we can return to the initial question: Does the notice given adequately perform the function intended by the statute?

The notice was not presented to or filed with the clerk of the school district as the statute prescribes. The notice, however, did reach the clerk's office and he filed it. We believe it can be assumed that the letter was open to public inspection as the statute required. Therefore, the appropriate officer of the pub-

---

was initially passed it had a one-year filing period. Oregon Laws 1917, ch 248.

Perhaps the legislature had a twofold purpose—one, the purpose discussed above; two, to provide a cutoff time for claims. When the notice statute was adopted there was no special statute limiting the time within which to file actions on public works bonds. The general statute of limitations was applicable. State ex rel. Southern Pacific Co. v. American Surety Co., 150 Or 236, 240, 44 P2d 1079. Probably the six-year statute applied. Oregon v. Davis, 42 Or 34, 71 P 68, 72 P 317. In 1945, a two-year special statute of limitations for bond claims was enacted. Oregon Laws 1945, ch 324.

This general six-year limitation period was too long for this type of claim. It would mean that public works contracts could not be completely closed until the expiration of six years after completion. So it may be that the legislature, in fixing a time within which notices of claim had to be filed, was attempting to accomplish two goals. It therefore adopted a time limitation between the usual time for filing notices of lien or claim on bonds and the general six-year statute of limitations.

lic body had some kind of notice on file and the notice was available to the public to give whatever member of the public inspected it some kind of notice.

The notice did not recite that the undersigned had a claim against the bond, as the statutory form does. The notice merely said, in effect, we have an unpaid bill in the amount of $30,187.54. The nature of the work, when and for whom the work was performed were fully described. The letter stated in very conciliatory language:

"This letter is in no way either a reflection or complaint on the above contractors but is sent to you to protect our interests in this matter."

This is not the assertion of a present claim against anyone except Rushlight. Nevertheless, we believe it is adequate. The school district was informed that there was an unpaid subcontractor and under the provisions of the above quoted statute they could pay the bill out of the retainage. The district could pay whether any claim was made on the bond or not.

If the general contractor or the surety examined the school clerk's records the warning flag was raised. The notice on file adequately informed the contractor or surety that one of the subcontractors of Rushlight was not paid. The contractor or surety could then move. They could stop the payment of retainage to Rushlight if it had not already been paid. They could take any other action available to them to force Rushlight to pay the bill. The fact that the bill was unpaid is the important consideration to the contractor and surety. Formal words of claim against the bond only have importance to the contractor or surety later when the absence of formal words might offer a defense to an action by the claimant.

The surety is not named as the statutory form provides. However, the job on which the work was done by the claimant is definitely described. The school district, the general contractor, the surety, all knew who the surety was without the claimant naming it. It seems to us that the notice here given performed in all respects the function for which it must have been required by the legislature.

The general principle of strict compliance stated in *McCain v. State Tax Com.*, 227 Or 486, 360 P2d 778, 363 P2d 775, is relied upon by respondents. This principle of strict compliance has no applicability as the legislature did not here require the statute to be strictly followed. It required only a notice "substantially as follows."

In *Loe et ux v. Lenhard et al*, 227 Or 242, 362 P2d 312, the statute had no specific legislative direction that a required notice be "substantially" as stated. This court held, however, that substantial compliance was all that was required. That case is not made the basis of this decision as there this court stressed that the requirement of notice was a limitation on a pre-existing common-law right. Therefore, it should be liberally construed. Here the right is created by statute. In that case, however, the same general test was used to determine the sufficiency of the notice. Was the purpose of the statute fulfilled by the notice filed?

The judgment is reversed and the cause is remanded.