# GAMBLE, ET AL. *v.* WOODLEA CONSTRUCTION CO., INC., ET AL.

[No. 222, September Term, 1966.]

*Decided April 7, 1967.*

*Motion for reargument filed May 4, 1967, denied May 10, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*Thomas A. Garland* for appellants.

*William F. Mosner,* with whom were *William J. Hart, Jr.* and *Power & Mosner* on the brief, for appellees.

Barnes, J., delivered the opinion of the Court.

The appellee, Woodlea Construction Co., Inc. (builder) filed a mechanic's lien for $12,411.93 in the Circuit Court for Baltimore County on September 24, 1965, against the dwelling house of the appellants, Charles Lawrence Gamble and wife (owners). The trial court (Raine, J.) after taking testimony entered a decree on January 13, 1966 sustaining the lien in the amount of $3,008.10. The appeal is from this decree.

The owners and builder executed a written contract for the construction of the one-story ranch house on January 9, 1964. The contract price was $30,000. Certain work, specified as "extras" increased the contract price by $565.00. The house was to be completed in 180 days.

During the course of construction many differences arose between the builder and the owners regarding the performance of the building contract, which contained a provision for the arbitration of such differences. This provision was availed of twice, but the parties did not carry out the last arbitration agreement of March 31, 1965, and work came to a standstill. Finally by an "Agreement and Compromise," dated May 25, 1965, it was agreed that the builder would immediately resume work, begin grading within five days and deliver the completed project, subject to the written approval of the arbitrators, with releases of mechanics' liens, at the end of twenty-one days, that is, by June 15, 1965. It was also agreed that the completion date should be extended in the event of delays caused by weather conditions.

Andrew Bozylinski, the president and sole owner of the builder, Woodlea Construction Co., Inc., testified that wet weather prevented the completion of the exterior work and that it would have taken three or four additional days to finish the outside work. He testified that, except for the outside work, the interior construction of the house was completed except for the sanding and finishing of the floors. Exterior work which had to await the completion of the final grading, such as the

rear porch, exterior walls, driveways, etc., were not completed. Cross-examination disclosed that certain other relatively small interior items were not completed. Mr. Bozylinski testified, without contradiction, that when he arrived on the job on the morning of June 16, 1965, he was met by the owners who had slept overnight in the house. They ordered him off the job and refused permission to do further work. Being threatened with calling the police, he left the job. Thereafter the owners refused to make any further payments under the building contract, moved into the house and completed the remaining work themselves. The owner had previously paid the builder $20,140.00.

The carpenter subcontractor on the job testified in regard to the interference by the owners with the progress of the work. He stated:

> "Well, we tried to avoid him [Mr. Gamble] as much as possible, because he was continually—he would follow us around the house. They stayed with us constantly. If he wasn't [was] working and he wasn't there, his wife was there and just overlooking everything we did.
>
> "* * * [H]e would talk to my help quite a bit. Naturally, that slowed them down, couldn't get the work done."

He complained to the builder about this but the builder told him to do whatever the owners wished done within reason and if there was any extra expense, the builder would take care of it.

The plumbing and heating subcontractor testified, without contradiction, that Mr. Gamble requested him not to deliver a bathtub to the house, but to keep it at his home or shop for a while. When Mr. Gamble was asked the reason for this request, he stated that he wanted to tie up the job for a while and that he intended "to break" the builder and that "when he got done with him he wouldn't even have his own home."

In preparing the bill of particulars to the mechanic's lien, counsel for the builder inadvertently included as part of the particulars, a driveway and tiled foyer which were not installed

by the builder. No dollar amounts, however, were assigned to these particular items. There was no mention in the bill of particulars of the grading, seeding, tree removal, pruning or porches which had not been completed.

After taking testimony, the trial court found that the work had been substantially completed, and after computing various allowances and deductions, found a balance due of $5,554.00. Unknown to the builder, two subcontractors had filed mechanic's liens in a total amount of $2,545.90. This amount was deducted from the balance of $5,554.00 leaving a net amount of $3,008.10 for which the decree was entered.

The owners contended in the lower court and urged before us that (1) the trial court was clearly erroneous in finding that the building contract had been substantially performed, (2) the performance by the builder demonstrated that he did not attempt in good faith to perform the building contract, and (3) the entire amount of the mechanic's lien should be disallowed, in any event, because it had been grossly and deliberately exaggerated.

### (1) and (2)

It will be convenient to consider the owners' contentions (1) and (2) together as they are in part related.

Our predecessors have set forth the applicable law in *Hammaker v. Schleigh,* 157 Md. 652, 668-69, 147 Atl. 790 (1929). Judge Parke, for the Court, stated:

> "In a building contract where the plaintiff, in good faith, performs all that the contract requires, although not at the time or in the manner required, but substantially as agreed, *except in respect to those things which he is prevented from performing through the breach or default of the owner,* the plaintiff is entitled, when the *owner has received the fruits of plaintiff's work, material and labor,* to recover, since full performance has failed in those things which are not of the essence of the contract, and *since otherwise there would be a forfeiture of the plaintiff's beneficial work, labor and material to the unjust enrichment of the owner."*

" * * * The mode of ascertaining the real benefit derived by the owner from the substantial performance of the contract, where there has been *no willful breach going to the essence of the contract,* but comparatively slight omissions and defects in performance, which can be readily ascertained, measured, and compensated in damages, is ordinarily to estimate the whole work at the price fixed by the contract, and to deduct from the amount whatever sum would be required to complete the part of the work left unfinished through the default of the contractor." (Emphasis supplied).

We followed *Hammaker* in *Evergreen Amusement Corp. v. Milstead,* 206 Md. 610, 621, 112 A. 2d 901 (1955) where Judge (now Chief Judge) Hammond, for the Court, stated:

"The question of whether there has been substantial compliance and whether a deviation from the contract requirements is wilful or justified is ordinarily a question for the trier of the facts."

See also *Parker v. Morgan,* 170 Md. 7, 183 Atl. 224 (1936).

Without attempting to review in detail the specific findings of the trial court in regard to the various allowances to the builder and deductions given the owners, it is apparent that the substantial part of the credits to the owners was for the completion of the outside work completed by the owners after they had ordered the builder off the job and prevented the builder from completing the outside work. The testimony of the builder and of the subcontractors amply justified a finding that the owners prevented the builder from performing the outside work and that the builder had performed the work substantially as agreed prior to the builder's ejection from the job.

As the Agreement and Compromise of May 25, 1965, specifically provided for an extension of the time for completion in the event of delays caused by weather conditions and the uncontradicted evidence of the builder indicated that several days of rain prevented completion on June 15, 1965, the trial court could well have found from the evidence that the builder had at-

tempted in good faith to complete the contract but was frustrated in this attempt by the action of the owners and that the owners wrongfully took possession of the dwelling. Indeed, there was uncontradicted evidence that the frustration by the owners of the builder's effort to complete the work in accordance with the contract was motivated by desire on the part of the owners "to break" the builder. In our opinion, there was sufficient credible evidence in the record to support the trial court's finding that the builder had in good faith substantially performed the work in accordance with the building contract. We cannot say, under these circumstances, that his finding of substantial performance was clearly erroneous. Maryland Rule 886 a.

### (3)

The owners contend that, in any event, the trial court erred in not holding that the builder's claim for a mechanic's lien should be dismissed in its entirety because the claim was grossly and deliberately exaggerated.

Many decisions of courts of last resort in other states have held, by construing the applicable statute or without specific statutory authority, that if a claimant for a mechanic's lien has wilfully and intentionally exaggerated his claim, he cannot enforce any amount of his claim against the subject property. See e.g., *Putnam v. Heathman,* 367 S. W. 2d 823 (Mo. 1963) ; *Duval v. Fuchs,* 141 Mont. 123, 375 P. 2d 541 (1962) ; *Boyer v. Dawson,* 207 Or. 211, 293 P. 2d 739 (1956) ; *Alsheimer v. Palmer,* 119 Fla. 335, 161 So. 559 (1935) ; *Byrum Hardware Co. v. Jenkins Building & Supply Co.,* 226 Ala. 448, 147 So. 411 (1933) ; *Armour & Co. v. McPhee & McGinnity Co.,* 87 Colo. 97, 285 P. 942 (1930) ; *Blake v. Crystaline Lime Co.,* 37 Idaho 637, 221 P. 1100 (1923) ; *Ginsberg v. Capone,* 91 Conn. 169, 99 Atl. 501 (1916) ; *Griff v. Clark,* 155 Mich. 611, 119 N. W. 1076, 29 L.R.A. (N. S.) 305 (1909) ; *Aeschlimann v. Presbyterian Hospital,* 165 N. Y. 296, 59 N. E. 148 (1901) ; *McPherson v. Walton,* 42 N. J. Eq. 282, 11 Atl. 21 (1886) ; *Stubbs v. Clarinda C. S. & S. W. R. Co.,* 65 Iowa 513, 22 N. W. 654 (1885) ; 36 Am. Jur., *Mechanic's Liens,* Secs. 158-160. Cf. *E. S. Gaynor Lumber Co. v.*

*Morrison,* 75 S. D. 132, 60 N. W. 2d 83 (1953) and *Berry v. Van Soelen,* 35 N. M. 259, 295 P. 301 (1931) voiding mechanics' liens largely overstated through the claimants' gross negligence.

This question apparently has never been decided by this Court. We do not reach the question in the present case because assuming, without deciding, that the rule is applicable, it is clear to us from the evidence in the case that the trial court was not clearly erroneous in failing to conclude that the builder wilfully and intentionally made a false statement to exaggerate his claim. As in *Parker v. Morgan, supra,* the builder claimed the full contract price and the price of extras, from which the amount paid on account was deducted. The inclusion of the items for tile and driveway in the bill of particulars and for which no amount was specifically allocated, was an inadvertence by counsel and was fully explained.

Where, as in the present case, the builder has substantially performed the contract, the measure of his lien may be the unpaid balance of the contract price, less the cost of completing the work in accordance with the contract. See 57 C.J.S., *Mechanic's Liens,* Sec. 175 and cases cited therein; cf. *Evergreen Amusement Corp. v. Milstead, supra; Knudson v. Bland,* 253 Iowa 614, 113 N. W. 2d 242 (1962).

It was suggested by the owners in argument that the builder under all the circumstances did not come into equity with clean hands. Here again, if we assume, *arguendo,* that the "clean hands" doctrine is applicable at all in this special statutory proceeding, we do not find that the trial court was clearly erroneous in not finding that the builder came into court with "unclean hands." The evidence indicates the contrary.

*Order affirmed, the appellants to pay the costs.*