In the Matter of **ALFAR DAIRY, INC.,**
**Debtor.**

**PALM BEACH COUNTY BOARD OF**
**PUBLIC INSTRUCTION, Appellant,**
v.
**ALFAR DAIRY, INC., Appellee.**
**No. 71-2970.**

United States Court of Appeals,
Fifth Circuit.
April 25, 1972.
Rehearing and Rehearing En Banc
Denied June 23, 1972.

Billy R. Jackson, James M. Gann, Howard M. Antevil, Jackson & Jackson, Palm Beach, Fla., for appellant.

Booher & McGrotty, J. B. Booher, Fort Lauderdale, Fla., for appellee.

Commissioner of Internal Revenue, Washington, D. C., Secretary of the Treasury, Washington, D. C., Security & Exchange Commission, Atlanta, Ga., for other interested parties.

Before TUTTLE, GEWIN and THORNBERRY, Circuit Judges.

THORNBERRY, Circuit Judge:

On June 8, 1966, the School Board of Palm Beach County, Florida (the Board) contracted with Alfar Dairy, Inc. to purchase milk for the 1966–67 school year at a price of $.0578 per one-half pint. Deliveries commenced on August 29. On October 13, Alfar filed a voluntary petition under Chapter XI of the Bankruptcy Act (the Act). The bankruptcy court appointed Alfar Dairy, Inc. Debtor in Possession (Alfar) and authorized the Debtor in Possession to continue the business operation. On November 22, Gordon A. Nielsen, president of Alfar, wrote the Board informing it of Alfar's bankruptcy and pointing out that under the bankruptcy laws Alfar was permitted to "void any contract." He said further that he could not continue to supply milk at the contract price but would agree to provide it at $.0661 per half-pint. Absent an agreement at the higher price, Alfar would have to "reject the contract" by November 30. The Board immediately solicited new bids, excluding Alfar from the bidding, and awarded milk contracts at $.0668 and $.0689. These higher prices resulted in a total additional cost to the Board of $40,968.04 for the balance of the school year.[1]

On December 12, Alfar filed its Plan of Arrangement with the bankruptcy court. The Plan did not list the Board as a creditor or reject the executory contract for the delivery of milk.[2] Notice to creditors with the Plan attached was mailed by the court on December 13. On December 15, Alfar filed an Amended Plan of Arrangement that specifically rejected its contract with the Board. The Board did not, however, receive notice of the Amended Plan. The next day Alfar filed a Petition for Order to Show Cause why the Board should not turn over sums of money due Alfar for dairy products furnished the Board during October and November of 1966 (some ice cream deliveries may have occurred after November). After preliminary jurisdictional skirmishing, the bankruptcy court ordered the Board to show cause on June 28, 1967 why it should not pay these sums to Alfar. In the meantime, on April 12, 1967, Alfar filed its "Application for Confirmation of Plan of Arrangement." That same day the Plan was confirmed by the court. On June 28 a hearing was held on the order to show cause.

On May 28, 1970, the Referee in Bankruptcy issued his Opinion and Order in response to Alfar's Petition for Order to Show Cause. He found that (1) there was a valid contract between the Board and Alfar for the delivery of milk during the 1966–67 school year and that Alfar had breached the contract; (2) Alfar's petition did not list the Board as a creditor and its original Plan of Arrangement did not specifically reject the executory milk contract with the Board; (3) the Amended Plan of Arrangement rejected the contract but the Board and creditors never received notice of the Amended Plan; (4) the Board had actual knowledge that Alfar did not intend to fulfill its commitments under the contract; and (5) although the original Plan was confirmed, no petition for approval of the Amended Plan was ever made and the Amended Plan was never confirmed.

1. Alfar argues that the Board should have been required to mitigate its damages by permitting it to bid on the new milk contract. The bankruptcy laws do not, of course, allow a customer to freely cease doing business with a supplier just because the supplier is a bankrupt. In the instant case, however, Alfar, not the Board, breached the contract. The Board, understandably wanting a reliable source of milk for its school children, chose not to permit Alfar to rebid. We do not think the Board was under any duty to accept a new bid from Alfar.

2. § 357(2) of the Act provides that an arrangement may include "provisions for the rejection of any executory contract;"

The Referee concluded as a matter of law that:

The bankruptcy act provides two (2) methods by which the rejection of executory [contracts] of a chapter XI debtor may be made. These two methods are as follows:

a. Sec. 313(1) permits the rejection upon notice to the parties to such contracts, and

b. By providing for the rejection of such contracts in the Plan of Arrangement itself pursuant to Sec. 357(2).

In the case at hand, Alfar evidently attempted to reject the executory contract with the School Board in accordance with the second method set forth above by including the rejection in an Amended Plan of Arrangement. Both of the two methods for rejection of executory contracts require notice of such rejection to be served on the other party to the contract. Here there was no notice served on the School Board, and, in fact, the *Amended* Plan of Arrangement was never confirmed. The only order of confirmation that was entered by this Court was on the original Plan of Arrangement. Consequently, this Court concludes that the executory contract with the School Board was never terminated in accordance with the provisions of Chapter XI of the Bankruptcy Act.

Secondly, the Court concludes that the debt owing by the School Board to Alfar and the debt owing by Alfar to the School Board in the amounts found to be due herein constitute the requisite mutuality required by § 68 of the Bankruptcy Act, consequently, the School Board is allowed a set-off against Alfar, . . . .

The setoff of the $36,381.45 admittedly owed Alfar by the Board for milk and ice cream deliveries against the Board's damage claim of $40,968.40 left the Board with an unsecured claim of $4,586.59 against Alfar. Alfar petitioned the district court for review of the Referee's order.

The district court reversed. It concluded that Alfar had adequately rejected the contract, thus making the Board a creditor who, under § 369 of the Act, had to file a proof of claim pursuant to § 355 within the time provided by § 57(n) (six months from the first meeting of creditors, which occurred December 28, 1966). Since the Board had not filed as a creditor, and the time for doing so had long since passed, the court ordered the Board to pay Alfar $38,315.70,[3] the sum it had withheld for milk and ice cream furnished, plus interest.

It concluded that since the Board knew by November 30, 1966, that Alfar did not intend to comply with the milk contract, it should have filed as a creditor, notwithstanding that it had no official notice from the bankruptcy court of Alfar's intention to reject the contract and that the Amended Plan of Arrangement rejecting the contract was never confirmed.

■■ On appeal the Board urges us to be strict constructionists of the bankruptcy laws and follow the Referee's approach to this case. Alfar argues for the equitable route, the one apparently taken by the district court. Although the equities of this case certainly are not as clear to us as they are to counsel for Alfar,[4] we believe that equity notwithstanding the bankruptcy laws must be complied with. Alfar, because of inadvertence or otherwise, failed to follow them in its attempted rejection of its executory contract with the Board. Not only was the Board never officially notified of the intended rejection, but also no arrange-

---

3. The Referee found this sum to be $36,381.45. The record is not entirely clear but we accept the district court's figure of $38,315.70.

4. Alfar thinks that the Board's action in refusing to let it rebid on the new milk contract was unconscionable. The district court's summary rejection of the Referee's Opinion and its cursory treatment of the bankruptcy laws seem to indicate it agreed. As we said above, note 1, *supra*, we do not. The Board's primary duty was ensuring a constant supply of milk for its school children. Its decision to look elsewhere for milk after Alfar's breach was certainly not unreasonable.

ment rejecting the Board's contract was ever confirmed by the bankruptcy court.[5] We conclude, therefore, that the Board's executory contract with Alfar was never rejected and that the Board therefore never became a § 369 creditor required to file a proof of claim.

Section 357(2) [of the Act] permits an arrangement to include "provisions for the rejection of any executory contract." . . . . Under Section 357(2), the debtor is given the absolute right to reject any of his executory contracts, *subject to confirmation of the arrangement. Unless and until the arrangement is confirmed, the rejection is not effective,* but a person who will be injured by the rejection is deemed a creditor under Section 353 for the purposes of Chapter XI and of the arrangement, its acceptance and confirmation. *Rejection under Section 357(2) cannot be tacit; the arrangement must expressly provide for rejection in order to effect such.* The contract must be rejected in its entirety, or not at all. Collier Bankruptcy Manual Ch. XI–8, p. 1226 (emphasis added).[6]

But we are constrained to believe that the statute does not authorize a tacit rejection of an executory contract. Section 324 requires the petition to be accompanied by "a statement of the executory contracts of the debtor"; section 357 provides that an arrangement "may include . . . (2) provisions for the rejection of any executory contract"; and section 353 refers to rejection "pursuant to the provisions of an arrangement." These sections indicate, in our opinion, that express provisions of rejection are re-

quired to effect the rejection of an executory contract by the terms of an arrangement. In re Greenpoint Metallic Bed Co., 2d Cir. 1940, 113 F.2d 881, 884.

We think the import of the quoted passages is that even though a party to an executory contract with a bankrupt may know by one means or another that the bankrupt does not intend to perform, the contract is not voided as a result of this knowledge but remains in force until rejected pursuant to the Act. Any other rule could result in chaos and injustice in bankruptcy proceedings, which often involve hundreds of parties and strict statutory deadlines for filing claims. Informal, ad hoc compliance with the general contours of the Act is not sufficient.

Our decision to strictly adhere to the requirement of the Act is not merely an exercise in elevating form over substance. Because the Board and creditors did not receive notice of the Amended Plan they had no opportunity to discuss it, object to it, or vote on it. Moreover, the failure of Alfar's creditors to be informed of the contract with the Board may have influenced their decisions in agreeing to or objecting to the confirmation of the original Plan of Arrangement. In short, Alfar's shortcomings in complying with the Act prejudiced the Board. It was left in the equivocal position of knowing that Alfar had ceased to perform on the contract but having no notification from the bankruptcy court rejecting the contract or designating the Board a creditor. In addition, creditors, who were unaware of the contract with the Board, were quite possibly prejudiced.

---

5. §§ 39(a) (1) and 58(c) of the Act require the Referee to give notice to interested parties of relevant proceedings in a bankruptcy action. It is at least arguable, therefore, that the failure to give notice to the Board of the Amended Plan was the fault of the Referee, not Alfar. If the case turned on this failure of notice we would have to delve deeper into the question of responsibility for notice. It does not, however, since there is no

question that responsibility for getting the Amended Plan confirmed clearly rested on Alfar. The Plan was never confirmed. Consequently, the Board's contract was never rejected.

6. This passage goes on to discuss rejection under § 313(1). There is no indication in the record that Alfar attempted this type of rejection of its contract with the Board.

■ Having concluded that the milk contract was never rejected and thus remained in full force, the one remaining question is whether the requisite mutuality existed between the Board's debt to Alfar and Alfar's debt to the Board to permit a setoff under § 68 of the Act. The Referee concluded there was mutuality but the district court thought there was not. The court believed that since the milk contract was agreed upon by the Debtor, the Board could not set off its damages arising from the breach of that contract against moneys it owed the Debtor in Possession. We think the Referee's determination of mutuality was correct. Alfar was named Debtor in Possession on October 13, 1966. The Board paid Alfar for all milk deliveries through November 11 and all ice cream deliveries through October 28. Consequently, Alfar's claim against the Board is for milk deliveries between November 11 and November 30, when they were terminated, and for ice cream supplied after October 28. The Board's damage claim against Alfar is for the extra cost of milk purchases by the Board from November 30 until the end of the school year. The claims on both sides arose, therefore, from transactions after October 13, when the Debtor became the Debtor in Possession. Moreover, the contract was breached by the Debtor in Possession, not the Debtor. The Order on Review is reversed and the Findings and Conclusions of the Referee are ordered reinstated except as otherwise indicated in note 3, *supra.*

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.