**In the Matter of RABER INDUSTRIES, INC., Debtor.**

**RABER INDUSTRIES, INC., Plaintiff,**

v.

**SOUTHERN MACHINE & STEEL and H.D. Rutledge & Son, Inc., Defendants.**

**Bankruptcy No. 78–1438 T.**

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

Feb. 2, 1981.

Frank H. Cobb, Tampa, Fla., for Raber Industries, Inc.

R. Thomas Corbin, Fort Myers, Fla., for Southern Machine & Steel and H.D. Rutledge & Son, Inc.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration is an objection to claim no. 88 filed by Raber Industries, Inc. (Raber) the Debtor-in-possession in this Chapter XI arrangement proceeding. Claim No. 88 is actually an amended claim of claim no. 64 initially filed by Southern Machine and Steel, Inc. (Southern) which seeks damages in the amount of $24,058 arising out of an alleged breach of contract by Raber. Raber's objection to claim no. 88 is based on an alleged right of set-off against the amount otherwise admittedly due and owing.

The facts relevant to this controversy may be summarized as follows:

At all times relevant to this controversy, Raber was a subcontractor who was low bidder for the erection of structural steel and miscellaneous metals on a school construction project in Lee County, Florida. H.D. Rutledge & Son, Inc., was the general contractor on the project who used Raber's bid in formulating its own bid for the project.

Raber and Southern entered into their agreement on October 27, 1978 (Raber's Exh. # 3). The agreement provides that Southern will unload and erect both structural steel and miscellaneous metals at the job site. There is no provision in the agreement for fixing payment terms for the work to be performed by Southern. Neither is there a provision for monthly draws or progress payments. The agreement is equally silent concerning whether Raber must first receive funds from its general contractor Rutledge, as a prerequisite to making payment to Southern.

The record reveals that Southern commenced work on the project on October 30, 1978 and on November 10, 1978, submitted to Raber invoice # 9263 titled "Xtra—San Carlos School" in the amount of $1,860. A second invoice # 9820 was submitted by Southern on November 20, 1978 in the amount of $12,000. The record further reveals that by the terms of an agreement between Raber and its general contractor, Rutledge, Raber was required to submit its own draws to Rutledge on the 25th of each month preceding the month in which Raber was requesting payment. It is without dispute that Raber never honored the invoices of Southern.

On December 15, 1978, Raber filed its Chapter XI petition with this Court. As of that date, Raber had not received any of its payments from Rutledge as per the terms of their agreement. It further appears, however, that Raber never made a draw request from Rutledge. Southern left the project once on December 19, 1978 and then after returning for a short while left the project a second and last time on January 4, 1979.

On January 12, 1979 Raber advised Southern that its failure to perform was a default under the agreement and unless cured, Raber will engage another subcontractor to complete the work and Southern will be charged with the cost of completion. In due course, Raber hired C & T Erectors, Inc. (C & T) to complete Southern's work on the project and was billed $17,300 for the work by C & T.

It is disputed whether Southern performed any of the erection of miscellaneous metals on the project. It is without dispute, however, that both Raber and Southern anticipated that the miscellaneous metals could be erected for approximately $3,000, a figure which ultimately turned out to be too low. Part of the reason for the miscalculation of bids was that the work turned out to require significantly more time than originally anticipated, thus, costs more per ton to erect than structural steel erection. It is without dispute, however, that Southern did perform 90% of the contract for erection of steel by weight.

The record further reveals that there is no previous course of dealings between the parties and further that the parties disagree concerning the prevalent local custom in the construction industry with respect to when a sub-subcontractor is entitled to receive payments from a subcontractor.

Southern contends that it left the project because Raber refused to honor the invoices submitted for partial payments and, therefore, it was justified in refusing to further perform unless paid for the percentage of work completed and, therefore, Raber breached the agreement by refusing to make partial payments. *Jacquin-Florida Distillery Co. v. Reynolds, Smith and Hills, Inc.*, 319 So.2d 604 (Fla. 1st DCA 1975). Southern further contends that Raber cannot claim that it is excused from making partial payments, because it was never paid by the general contractor. Southern draws an analogy to the situation in which a subcontractor is entitled to receive payments from the general contractor regardless of when, or if, the general contractor is paid by the owner. See, *Peacock Construction Co. v. Modern Air Conditioning, Inc.*, 353 So.2d 840 (Fla.1977); *Snead Construction Co. v. Langerman*, 369 So.2d 591 (Fla. 1st DCA 1978). In addition, Southern contends that local custom does not alter or modify that general principle of law so as to permit Raber to await payment from Rutledge before paying Southern.

As a result, Southern contends that at the time it quit the job, it was entitled to $18,000 which represents 90% completion on a $20,000 construction agreement, and in addition, $6,058 which represents agreed extras which were to be paid on a time and material basis. Thus, Southern claims it is entitled to $24,058 which is not subject to any set-off. Southern further contends that no set-off is permissible because Southern agreed to complete the contract at the original price, provided Raber paid the invoices submitted.

In opposition, Raber contends that its duty to make payment under its agreement is the quid pro quo for performance and,

therefore, only arises upon completion of Southern's performance. Inasmuch as the agreement of the parties is silent with respect to the time for payment, Raber contends that payment is to be made within a reasonable time after completion of the performance. Therefore, because interim draws were never part of the agreement, complete performance was a condition precedent to payment. Raber contends that Southern breached the contract by failing to completely perform and, therefore, Raber's duty to pay never arose. Further, Raber is entitled to set-off the cost of completion of the project, to wit: $17,300. In addition, Raber contends that local practice in the construction industry is such that even assuming, but not admitting that, Raber would have a duty to honor interim draws which were never agreed to, Raber would be excused from performance simply because it did not receive payment from its general contractor for the work performed.

Having considered the foregoing, this Court is satisfied that the objection to claim no. 88 should be sustained for the following reasons:

█  Under general principles of contract law, if a contract is silent with respect to performance, what is a reasonable time is to be determined by the surrounding circumstances. *Doolittle v. Fruehauf Corporation,* 332 So.2d 107 (Fla. 1st DCA 1976).

█  Florida law further provides that a contracting party's duty to pay does not arise until the other contracting party has completed its performance. Therefore, this Court is satisfied that Raber's duty to pay only arose if, and when, Southern completed performance. The rights of the parties under the circumstances are fixed by the terms of their agreement and in this instance progress payments are not mentioned. Southern cites the case of *Jacquin-Florida, supra* for the proposition that to require a subcontractor "to complete the entire project before it could be paid [is] untenable ..." Id. at 608. This Court, however, finds that authority inapposite to the present instance because *Jacquin-Florida, supra* involved a contract which was divisible into three phases of work, each with its own progress payment scheme.

Even though this Court finds Raber's second defense that it need not pay Southern until such time as paid by Rutledge unpersuasive, Raber's defense that no progress payment was agreed to, is dispositive of the matter.

With respect to Southern's contention that Raber should not be entitled to any set-off, because Southern offered to complete the work at the contract price, this Court is satisfied that Raber did not have to accept the offer after Southern breached the contract initially, particularly this is so due to the fact that the offer was conditioned upon Raber's payment of the invoices submitted by Southern.

This leaves for consideration what amount may be set-off by Raber to the $24,058 admittedly due and owing to Southern.

The general measure of damages in cases such as the instant case is the cost of completion. Inasmuch as Raber and Rutledge agreed that a third party could be paid a reasonable fee to complete the erection left unfinished by Southern on a time and materials basis, this Court is satisfied that it is the proper measure to use as set-off. Accordingly, claim # 88 should be reduced and allowed only in the amount of $8,758 which represents the contract price, plus the agreed extras less the cost of completion.

A separate final judgment will be entered in accordance with the foregoing.