**In re NORTHUP–JOHNSON, INC. a Maryland Corporation, Debtor.**

**Bankruptcy No. 79–00918G.**

United States Bankruptcy Court,
D. Maryland.

Nov. 30, 1981.

Philip J. McNutt, Bethesda, Md., Trustee.

Barbara Sarshik, Washington, D. C., for The Law Company.

Richard H. Gins, Washington, D. C., for debtor.

HENRY D. EVANS, Bankruptcy Judge.

## STATEMENT OF FACTS

The basic facts of this matter are undisputed. Northup-Johnson, Inc. (henceforth Northup-Johnson) contracted with Forestville Associates to do the site grading work

on a shopping mall. Northup-Johnson began work on the site in late 1978 and worked on it periodically until July 13, 1979, when it left the job. In early 1979 Northup-Johnson requested and was paid Ninety-Three Percent (93%) of its contract price, but in May of 1979 it requested payment of Ninety-Eight Percent (98%) of the total contract and that payment was never made. In addition to its contract work, Northup-Johnson performed certain mining and mixing extras pursuant to an agreement under which The Law Company absorbed Sixty-Five Percent (65%) of the charges and Northup-Johnson assumed the other Thirty-Five Percent (35%). On May 29, 1979, Northup-Johnson filed for relief under Chapter XI of the Bankruptcy Act.

Subsequently, The Law Company and Forestville Associates filed claims against Northup-Johnson. The Trustee objected to these claims and filed counterclaims. Forestville Associates assigned its claims to The Law Company and the proceedings were consolidated. The Law Company's claim is in the amount of Three Hundred Fifty-Three Thousand Three Hundred Sixty-One and 46/100 Dollars ($353,361.46) plus attorney's fees incurred since January 31, 1981. The Trustee's counterclaim is in the amount of Thirty-Nine Thousand Six Hundred Thirty-Two and 88/100 Dollars ($39,-632.88). The Law Company has admitted Twenty-Five Thousand Seven Hundred Sixty-One and 37/100 ($25,761.37) of that amount.

## CONCLUSIONS OF LAW

At the commencement of the trial on the merits, Judge Goldburn ruled that if any post-petition damages were established, they would be treated as a priority claim (Tr. at 4).

The questions that arise from these undisputed facts are: (1) whether The Law Company has standing to sue Northup-Johnson although The Law Company was not a signatory of the contract; (2) which party breached the contract; (3) whether the breach was the proximate cause of damage to the non-breaching party, and (4) what the amount of damages was.

■ The Law Company has standing to sue in this matter. Sections 3, 8, 9, 10, 13, 14, 15, 18, and 23 of the trade contract outline The Law Company's rights and obligations. Most specifically, § 3 of the trade contract allows The Law Company to terminate the contract, complete Northup-Johnson's work, and charge Northup-Johnson with the costs of completion, if Northup-Johnson breached the contract. It is this last contractual right that The Law Company seeks to enforce in this proceeding. Because The Law Company was mentioned specifically in the contract and was to receive direct benefits under the contract, it was an intended third-party beneficiary and could, under Maryland law, sue although it was not a signatory. *See Spates v. Spates*, 267 Md. 72, 77, 296 A.2d 581 (1972).

■ Even if The Law Company were not a third-party beneficiary of the original contract, Forestville Associates assigned its rights to The Law Company. Under Maryland law, a party can assign a cause of action *ex contractu* to another party even if the assignee is not a party to the agreement, is not in privity with the signatories, and the original contract itself was not assignable because it involved personal services. *See DuPont de-Bie v. Vredenburgh*, 490 F.2d 1057, 1060 (D.Md.1974); *Motor Vehicle Security Fund v. All Coverage Underwriters, Inc.*, 22 Md.App. 586, 614, 325 A.2d 115 (1974).

■ The next question is whether Northup-Johnson breached the contract when it left the job on July 13, 1979, or whether The Law Company breached the contract earlier when it refused to pay Northup-Johnson up to Ninety-Eight Percent (98%) of the contract price. As the Trustee points out, in order to enforce a contract right, the complaining party must substantially perform under the contract. In this case, The Law Company had paid up to Ninety-Three Percent (93%) of the contract price, thereby showing substantial performance and cooperation. Delay in paying a later installment where the amount of work done is

disputed is not a breach of the contract, especially when The Law Company contended that the site had deteriorated and that, therefore, more than Five Percent (5%) was disputed.

Breach occurred when Northup-Johnson left the job site on July 13, 1979. The Trustee admits that the work was not totally complete at that time, although the actual degree of completion is in dispute.

■ The breach occurred when Northup-Johnson left the job site without completing its contractual duties. The Law Company was forced to hire additional personnel and machinery to complete the site grading. Damages in the form of completion costs were proximately caused by Northup-Johnson's failure to complete its job. The Trustee attempted to establish that excessive rainfall, rather than Northup-Johnson's breach, caused the damage on the site. Northup-Johnson's responsibility was to complete its grading work properly, and the contract contained no allowances for weather conditions. Cf. Gamble v. Woodlea Construction Co., Inc., 246 Md. 260, 265, 228 A.2d 243 (1967) (contract clause providing for unusual weather conditions). The testimony of Colevas, Pruett, and Wensel established that Northup-Johnson's failure to control drainage of rainwater, rather than the rain itself, caused the deterioration of the site. Excessive rainfall is not an event of sufficient suddenness and uniqueness to constitute a superseding unforeseeable cause of the damages; Northup-Johnson's breach was the proximate cause of the damages to The Law Company.

■ The final question with regard to the claim of The Law Company is the amount of post-petition damages entitled to priority status. Northup-Johnson filed its petition on May 29, 1979. The request for payment that led to the dispute was submitted on May 29, 1979, and the breach occurred on July 13, 1979. All expenditures to complete Northup-Johnson's work were made after the date of filing. The failure to control the water and resultant damages all could have been corrected by Northup-Johnson itself while it was working on the site, so no contractual deficiency occurred until Northup-Johnson left the site, thereby eliminating the possibility that deficiencies could be corrected without damage to The Law Company.

■■ The basic principle of computing damages under long-established Maryland law is to place the non-breaching party in the position it would have been in had the contract been performed. See P. Dougherty Company v. Gring, 89 Md. 535, 43 A. 912 (1899), cited in 8 Md.Law Ency., Damages § 126. The Law Company failed to prove the entire amount of the damages it claims. Mere presentation of invoices with Wensel's assertion that he reviewed them (Tr. at 227) was insufficient to prove damages because the invoices are not self-explanatory as to work done or reasonableness of charges.

■ The only damages proven were the costs of the work done by Arundel Asphalt, Inc., because those charges were explained and substantiated by the personal testimony of Colevas (Tr. at 325 et seq.) The total costs of the completion work done by Arundel Asphalt, Inc., are One Hundred Sixty-Two Thousand Three Hundred Ninety-Six and 47/100 Dollars ($162,396.47). The asphalt price escalation charge of Fifty Thousand Thirty-Two and 88/100 Dollars ($50,032.88) is properly included in this total because Northup-Johnson's breach delayed progression to the paving stage of the project, thereby causing this escalation. The Trustee presented no evidence to show that any of these costs were unreasonable or unnecessary.

■ The amount of Eighteen Thousand Five Hundred Sixty-One and 97/100 Dollars ($18,561.97) associated with removal of mixed material and replacement with off-site borrow must then be subtracted from that total because the mixing was done as an extra, at the request of The Law Company, and it did not result from Northup-Johnson's breach of the original contract. The total damages properly claimed by The Law Company are One Hundred Forty-Three Thousand Eight Hundred Thirty-Four and 50/100 Dollars ($143,834.50). No

award of attorneys fees is proper in this case because there is no showing that the Trustee acted in bad faith.

The Law Company has admitted Twenty-Five Thousand Seven Hundred Sixty-One and 37/100 Dollars ($25,761.37) of the Trustee's counterclaim. This amount is Sixty-Five Percent of the costs incurred under the extra agreement. The Trustee's claim of the additional Thirty-Five Percent (35%) of the costs incurred pursuant to this agreement, based on the condition that it was to be part of a complete settlement, is improper because it imposes an external condition on that agreement that does not appear within the confines of the agreement itself.

It is, this 30th day of November, 1981, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, That the priority claim of The Law Company is allowed in the amount of One Hundred Forty-Three Thousand Eight Hundred Thirty-Four and 50/100 Dollars ($143,834.50), and it is further

ORDERED, That the Trustee's counterclaim is allowed in the amount of Twenty-Five Thousand Seven Hundred Sixty-One and 37/100 Dollars ($25,761.37).