In the Matter of FORDSON ENGINEER-ING CORPORATION, a Michigan corporation, Debtor,

Fred DERY, Trustee of Debtor, Plaintiff,

v.

GENERAL MOTORS CORPORATION (General Motors Assembly Division, New Plant & Facilities, Orion Township) a Michigan corporation; Brian & Gregory Contracting Company, a Michigan corporation, et al., Defendants.

Bankruptcy No. 80–07070–W.
Adv. No. 81–1955.

United States Bankruptcy Court,
E.D. Michigan, S.D.

Dec. 8, 1982.

Cyril Abramson, Troy, Mich., for Fred Dery.

Thomas M. Reid, Birmingham, Mich., for Brian & Gregory Contracting Co.

## MEMORANDUM OPINION AND ORDER

GEORGE E. WOODS, Bankruptcy Judge.

Claiming a breach of contract, a complaint was filed in this Court by Fordson Engineering Corporation (Fordson) for recovery of damages from Brian & Gregory Contracting Company (B & G) in the amount of approximately $76,850.00.

## I.

On January 11, 1981, Fordson filed for relief under Chapter 11. On or about February 15, 1981, Fordson entered into two contracts with B & G wherein Fordson was to supply labor and materials for structural steel and support slabs on the General Motors Assembly Division (GMAD) Lake Orion project. GMAD is the owner of the project, Barton-Malow Company (Barton-Malow) is the construction manager, B & G is the prime contractor, and Fordson was the subcontractor of B & G. On August 31, 1981, Fordson terminated its contracts with B & G.

On September 18, 1981, Fordson filed a statement of account and mechanics' lien. On December 18, 1981, Fordson filed a complaint against GMAD, Barton-Malow, B & G and numerous sub-contractors seeking damages in the amount of $125,000.00 plus costs, interest and attorney fees. Fordson further requested that, in the event of a default, the Court find it to have a lien on the land and buildings at issue superior to that of the other defendants.

Claims as to defendants other than B & G have either been resolved or held in abeyance and are not the subject of the present action.[1] As to B & G, several findings were made by the Court during the course of litigation. First, on February 12, 1982, the Court issued a memorandum opinion and order finding that Fordson had substantially complied with the Michigan Mechanics' Lien Act, MCLA 570.1 et seq.[2] Second, on May 18, 1982, the Court issued an order allowing B & G to amend its affirmative defenses and denying Fordson's motion to dismiss and/or for summary judgment. Fordson's motion denied B & G had any right of setoff.

The testimony presented at trial, as well as the findings of fact and conclusions of law filed by the parties, places Fordson's

claim for recovery into three categories: (1) amounts due under contract P240, (2) amounts due under contract P246, and (3) amounts billed as extras to those two contracts. Fordson computes the funds owed to it for labor and materials supplied to B & G essentially as follows:

Base Contract – $93,222.00 – P240 – Job #5–81

| | | |
|---|---|---|
| 95% Complete | $88,560.90 | |
| Change Order #1 | 1,881.00 | |
| Total | | $90,441.90 |
| Paid to Date | | 79,401.00 |
| Amount Due: | | $11,040.90 |

Base Contract – $264,520.00 – P246 – Job #6–81

| | | |
|---|---|---|
| 95% Complete | $251,294.00 | |
| Paid to Date | 220,075.00 | |
| Amount Due: | | $31,219.00 |
| | | |
| Extras | $ 72,988.51 | |
| Paid to Date | 22,619.00 | |
| | | |
| Amount Due | | $50,369.51 |
| | | |
| P240 | $11,040.90 | |
| P246 | 31,219.00 | |
| Extras | 50,369.51 | $92,629.41 |
| | | |
| Equipment in Field | | $13,689.39 |
| | | |
| TOTAL DUE: | | $106,318.80 [3] |

Fordson admitted termination of the contract prior to completion.

Defendant B & G argues that as to contract P240, and contract P246, Fordson has been fully paid; that the amount claimed as owing by Fordson represents retainer held to completion of the contracts plus a sum representing a portion of the contracts not completed as of September 1, 1981. As to the amounts billed as extras to the two contracts, B & G asserts that: (1) extras are introduced by emergency field orders and bulletins; (2) extras so introduced are only paid by issuance of a change order; (3) as

---

1. *See,* Orders dated February 22, 1982, August 4, 1982, and October 26, 1982.

2. It should be noted that the Michigan Mechanics' Lien Act, MCLA 570.1 *et seq.,* was repealed effective March, 1982. Nevertheless, the Act is applicable to the present case.

3. The base figures are as submitted by Fordson. Mathematical errors have been corrected by the Court.

of September 1, 1981, no change orders had been issued, the first change order being issued on October 30, 1981; (4) change orders totaling $50,915.48 were approved subsequent to October 30, 1981. However, B & G asserts, since the earliest change order is dated October 30 and Fordson terminated the contract as of August 31, no moneys were owed.

Additionally, B & G alleges it is undisputed that Fordson breached its contract by refusing to complete it; therefore, it is entitled to offset all consequential damages of the breach subsequent to August 31. The total amount of offset as proposed by B & G is $120,951.12. This figure includes payroll costs to complete; material costs to complete; the costs incurred in discharging Fordson's mechanics' lien; costs incurred in discharging the claim of W.S. Molnar Company, a supplier of Fordson; and attorney fees. With regard to the setoff amount, B & G contends that Fordson's extras, allowed and paid to defendant subsequent to August 31, 1981, are in the amount of $50,915.48 and that B & G has or will receive retainer for Fordson's completed work, previously withheld by GMAD and Barton-Malow, in the amount of $31,377.30. B & G seeks to setoff from these amounts. B & G further proposes that the Court find that Fordson is indebted to it in the remaining amount of $38,658.34 and allow it to file its unsecured claim against the estate in that amount.

Prior to resolving this matter in terms of specific dollar amounts, certain legal issues must be addressed.

## II.

A. Amendment of Affirmative Defenses:

Paragraph two of B & G's first answer, filed on January 13, 1982, provided that at the time of termination of the contract, Fordson was owed $15,802.00 under contract P240, $30,047.21 under contract P246, and $75,427.28 for extras. On July 6, 1982, B & G, with the permission of the Court, amended its answer to provide that the amounts previously listed as owed under contracts P240 and P246 were in fact the value of work remaining to be done to complete the contracts.

Fordson asserts that statements contained in B & G's first answer filed on January 13, 1982 constitute judicial admissions. The Court disagrees.

■ Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. *Polk v. Missouri-Kansas-Texas Railway Company,* 341 Mo. 1213, 111 S.W.2d 138 (1937); *Sebree v. Rosen,* 393 S.W.2d 590 (1965); *see generally,* McCormick's on Evidence, ¶ 262 (2d ed. 1972). If pleadings are effective pleadings in the case, they have the standing of judicial admissions. However, if a pleading is amended, withdrawn or superseded by a substitute pleading, it ceases to be usable as a conclusive judicial admission, but is admissible in evidence as an evidentiary admission. *Raulie v. U.S.,* 400 F.2d 487, 526 (10th Cir.1968). An evidentiary admission is not conclusive, but rather is subject to contradiction or explanation. *Cooper v. Brown,* 126 F.2d 874 (3d Cir.1942).

Additionally, Rule 715 of the Rules of Bankruptcy Procedure provides, with exceptions not relevant herein, that Rule 15 of the Federal Rules of Civil Procedure applies in adversary proceedings. Rule 15(a) provides for liberal amendment of pleadings at the discretion of the trial court. *In Re Hunt,* 3 B.R. 92 (E.D.Pa.1980); *In Re Peckinpaugh,* 14 B.R. 692 (N.D.Ohio 1981).

■ In the present case, B & G was allowed to file its amended answer by leave of the Court. Therefore, any statements made in B & G's first answer are evidentiary admissions and as such are subject to explanation or contradiction.[4]

---

4. Fordson also argues that the proper rule for analysis is not 15(a) but 15(d). This argument is without merit. Rule 15(a) is concerned with matters occurring before the filing of the original claim, but overlooked. Rule 15(d) is only concerned with events which have occurred subsequent to the time the original pleading was filed.

**510**

### B. Breach of the Contract:

It is undisputed that Fordson terminated the contracts at issue on August 31, 1981. Fordson asserts that the contracts were terminated due to the failure of B & G to pay invoices for "extras". It is the position of B & G that all invoices were paid in accordance with the contracts of the parties, and that any unpaid portions were due to extras which had not been approved by the construction manager.

Both parties rely on the testimony of Richard Wozniak, comptroller of Barton-Malow Company. Mr. Wozniak testified as to the four-tiered payment cycle for extras. Of substantial import, he further testified that payment as to extras could, and often did, take many months.

Ronald Mascot, executive vice president of Fordson, testified that although Fordson had not been paid for extras from April of 1981 forward they did not challenge the delay in payment until August of 1981. He further testified that when immediate payment was refused he ceased operating and, on August 31, 1981, sent a telegram to B & G terminating the contracts.

■ Delay in making payment where the amount of work done is disputed or is being negotiated is not on that basis alone a breach of contract. Rather, breach occurs where a contractor unilaterally, as here, leaves a job site without completing its contractual duties. *In Re Northup-Johnson, Inc.,* 15 B.R. 767 (D.Md.1981). And damages in the form of completion costs may be assessed against a party breaching a contract. *See, Northup-Johnson, supra; In Re Raber Industries, Inc.,* 8 B.R. 631 (M.D. Fla.1981); *In Re 1616 Reminc Limited Partnership,* 14 B.R. 484 (E.D.Va.1981).

■ The Court finds that breach occurred by and when Fordson left the job site without completing its contractual duties. Fordson's decision was precipitous and finalizing of its contractual relationship with B & G—and, in view of the usual procedures relating to dealings about "extras", defiant and in disregard of sound business judgment. Fordson's actions forced B & G to hire additional personnel and machinery and obtain additional material to complete the job. Damages in the form of completion costs were caused by Fordson's failure to complete its job and, subject to the provisions of the Bankruptcy Code, may be setoff by B & G.

### C. Setoff Under the Bankruptcy Code:

■ Section 553 of the Bankruptcy Code specifically deals with the matter of setoff and provides in pertinent part:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

(1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title:

(2) such claim was transferred, by an entity other than the debtor, to such creditor—

(A) after the commencement of the case; or

(B)(i) after 90 days before the date of the filing of the petition; and

(ii) while the debtor was insolvent; or

(3) the debt owed to the debtor by such creditor was incurred by such creditor—

(A) after 90 days before the date of the filing of the petition:

(B) while the debtor was insolvent: and

(C) for the purpose of obtaining a right of setoff against the debtor.

The critical requirement of § 553 is that the setoff be of mutual credits against mutual debts. *Allbrand Appliance and Television Company, Inc.,* 16 B.R. 10, 12 (S.D.N.Y. 1980). The established formula for finding mutuality under the Act applies under the

Code: to allow a setoff the Court must find that the claims of the parties are owing to and due in the same rights and capacities. *In Re Virginia Block,* 16 B.R. 771, 775 (W.D. Va.1982).

■ Hence, for the reason that the debtor in possession is an entity different and distinct from the debtor itself, a post-petition debt cannot be setoff against a pre-petition claim. *Virginia Block,* 16 B.R. at 775; *In Re T & B General Contracting, Inc.,* 12 B.R. 234 (M.D.Fla.1981). However, where the right of setoff relates to a pre-petition claim of a debtor and a pre-petition claim against a debtor, mutuality is present. *T & B General Contracting,* 12 B.R. at 238.

■ In the present case, all claims and all debts are post-petition. Section 553 is silent as to the right of setoff for obligations arising post-petition. *In Re J.A.G., Inc.,* 7 B.R. 624, 628 (D.Mass.1980). Authority exists for the application of the concept of setoff to post-petition obligations. *In Re Hill,* 19 B.R. 375, 380 (N.D.Tex.1982), *citing In Re Alfar Dairy, Inc.,* 458 F.2d 1258 (5th Cir.1972), *cert. denied* 409 U.S. 1048, 93 S.Ct. 517, 34 L.Ed.2d 501 (1972). However, Collier's suggests that § 553 applies only to setoffs of claims and debts that arise before the commencement of the case. 4 *Collier on Bankruptcy,* § 553.04, note 19 (15th ed. 1981).

■ Assuming arguendo that § 553 is inapplicable to post-petition obligations; setoff of B & G's claims is appropriate. Alternatively, assuming that § 553 is applicable to post-petition obligations, authority exists for application of the concept of setoff.

Nevertheless, counsel for Fordson has asserted that setoff is inappropriate in the present case as B & G held the funds in trust for Fordson under the Michigan Builders Trust Fund Act, MCLA 570.151. As a general rule, funds held in trust may not be used to accomplish a setoff "because the requisite mutuality is lacking inasmuch

as the agent trustee is not functioning in his individual capacity". *In Re Fernandes Supermarkets, Inc.,* 1 B.R. 299, 301 (D.Mass. 1979). *See also, Allbrand,* 16 B.R. at 13. Whether a trust will be imposed in a bankruptcy proceeding is governed by state law. *Matter of Esgro, Inc.,* 645 F.2d 794, 797 (9th Cir.1981).

The Michigan Builders Trust Fund Act creates a trust fund for the benefit of customers, sub-contractors, laborers and materialmen as to moneys paid the building contractor to insure that the funds are actually used for construction purposes. *People v. Miller,* 78 Mich.App. 336, 259 N.W.2d 877 (1977). Under the Act, "the primary duty of the trustee is to insure that trust funds are spent on the particular project for which the trust funds were deposited." *Miller,* 78 Mich.App. at 345, 259 N.W.2d 877. The trustee must "pay those sub-contractors, laborers and materialmen who were engaged by (the debtor)", *K.M.H. Equipment Company v. Rogers, Inc.,* 104 Mich. App. 563, 565, 305 N.W.2d 266 (1981).

The seminal case with regard to the Michigan Builders Trust Fund Act is *Selby v. Ford Motor Company,* 590 F.2d 642 (6th Cir.1979). In *Selby,* the Sixth Circuit held that a building contractor did not have a sufficient beneficial interest in funds impressed with a statutory trust under the Michigan Builders Trust Fund Act to render such funds its "property" under the Bankruptcy Act. The Court set forth a number of public policy considerations for its decision:

> [The Act's] justification is that the contractor, subcontractor and materialmen cannot spread their risks in the same way as the grocer or other merchants with many customers. Large quantities of labor and materials may go into a single construction project over a long period of time.... There is a substantial risk that a general contractor who goes bankrupt will pull down with him some of his subcontractors and materialmen, as well as cause serious economic loss to the owner.

*Selby,* 590 F.2d at 647. *See also, Parker v. Klochko Equip. Rental Co., Inc.,* 590 F.2d 649 (6th Cir.1979).

Fordson has failed to cite, and the Court has been unable to locate, a case in which the existence of the Michigan Builders Trust Fund Act, or similar legislation in a sister state, has been held to preclude mutuality and thus setoff. Further, the present case does not appear to fit into the rationale of the Michigan Builders Trust Fund Act. The purpose of the Act is to provide payment for work completed by sub-contractors, suppliers or materialmen where the general contractor has filed for bankruptcy. In the present case, it is the bankrupt sub-contractor who has breached the contract and the moneys at issue are necessary to pay the additional sub-contractors required to complete the project. Logic dictates that if the moneys at issue are considered to be held in trust, it is for the sub-contractors who completed the work.

Additionally, under the trust fund theory a sub-contractor's beneficial interest arises only when the owner pays the building contract fund. *Selby,* 590 F.2d at 646. In the present case, B & G is seeking to setoff from the $50,915.48 received by it after August 31, 1982 with regards to Fordson's claimed extras and from the $31,377.30 held by GMAD and/or Barton-Malow as a retainer to insure Fordson's completion of the project. It does not appear that either of these funds had been paid to B & G at the time Fordson breached the contract. Therefore, no trust has arisen as to these funds and they may be utilized by B & G for setoff purposes.

D. Reasonableness of Costs to Complete

Having determined that B & G is entitled to setoff its costs to complete, the Court must determine the reasonableness of those costs. B & G claims $120,951.12 for costs to complete. However, mere presentation of invoices is insufficient to prove work done and reasonableness of charges. *In Re Northrup-Johnson,* 15 B.R. at 770. *See also, In Re Howarth Estate,* 108 Mich. App. 8, 310 N.W.2d 255 (1981). Rather, only those charges which are explained and substantiated by testimony will be upheld.

In the present case, B & G has submitted the following amounts as setoffs to which it is entitled:

A. Payroll costs of defendant required to complete plaintiff's contracts by the use of iron workers added to the payroll of defendant plus 10% handling customary in the industry—$53,978.38.

B. The material required to be purchased and contracts to be entered into for the completion of plaintiff's work on the project—$24,816.90. 10% handling customary in the industry—$2,481.69.

C. Gas and motor oil necessary for two iron worker crews to complete plaintiff's contracts used in the operation of vehicles and tools—$439.15.

D. Invoices which have been placed in a single category by defendant for equipment, material and the like to complete plaintiff's portion of the contracts being the following invoices in the following amounts:

| Invoice | # 8364 – | $2,565.00 |
|---------|----------|-----------|
| Invoice | # 8367 – | 3,485.00 |
| Invoice | # 8374 – | 210.00 |
| Invoice | # 8381 – | 2,900.00 |
| Invoice | # 8382 – | 1,200.00 |
| Invoice | # 8392 – | 2,504.00 |

E. Discharge of plaintiff's mechanics' lien by the filing of a bond, the Court finding that the recording of the mechanics' lien claiming sums due the plaintiff was improper . . . $4,195.00.

F. Discharge of the claim of W.S. Molnar Company . . . $4,000.00.

G. Additional material purchased from George Aho & Son, Inc., for materials to be employed on the project in the completion of plaintiff's contract, plus 10% handling customary in the industry—$4,887.00.

H. Invoices of BRIAN & GREGORY CONTRACTING COMPANY for materials employed on the project:

Invoice # EL130 – $1,364.00
Invoice # EL131 – 2,199.00
Invoice # EL132 – 3,740.00

I. Attorney fees paid by the defendant to its counsel in defense of this action as permitted by the Michigan Mechanics Lien Statute, MCLA 570.12.

B & G states in its proposed findings of fact and conclusions of law that, "The business records of the defendant allocate all these costs to this project, were compiled in the ordinary course of business by defendant at the time events were occurring, and defendant's president, Fred Thayer, and its employee, Ron Bracken, corroborate the completion costs as actually attributable to this project." See B & G's proposed conclusions of law and findings of fact at page 11.

Fordson has submitted allowable costs to complete as follows:

| | |
|---|---|
| Ironworkers Payroll and Material | $19,000.00 |
| Gas and Motor Oil Used | 200.00 |
| Invoice # 8364 | 2,565.00 |
| Invoice # 8367 | 3,485.00 |
| Invoice # 8374 | 210.00 |
| W.S. Molnar Company | 4,000.00 |
| TOTAL | $29,460.00 |

Fordson bases its figures on the testimony of Ronald Mascot. Fordson further asserts that B & G failed to present testimony as to whether the labor or materials were furnished, the necessity of the work done, or the reasonableness of the charges; therefore, Fordson claims B & G has failed to prove the essential elements of its setoff claim.

The Court, having reviewed the testimony and the findings of fact and conclusions of law of the parties, is satisfied that the following figures accurately represent the setoff claim for costs to complete the contract:

1. The parties are in agreement as to the following amounts and they are therefore allowed in full: Invoice # 8364 in the amount of $2,565.00, Invoice # 8367 in the amount of $3,485.00, Invoice # 8374 in the amount of $210.00 and discharge of the claim of W.S. Molnar Company in the amount of $4,000.00.

2. B & G asserts that $24,816.90 was required "for material required to be purchased and contracts to be entered into for the completion of plaintiff's work on the project". B & G also claims $2,481.69 as a 10% handling charge. This amount is supported by the evidence and is approved. Even Mr. Mascot testified that he could not state that the materials were not used on the GMAD project.

3. B & G asserts that its payroll costs to complete total $53,978.39, and relies on the time sheets of the iron workers. Ronald Mascot testified that the time sheets were vague and that certain work appeared to have been done twice. He further testified that he would estimate labor costs on contract P246 to be between $17,000.00 through $22,000.00 and on contract P240 to be $2,000.00. The Court hereby adopts the figures set forth by Mr. Mascot and approves $24,000.00 in labor costs to complete.

4. B & G claims $439.15 for gasoline and motor oil necessary for the completion of plaintiff's contracts. Mr. Mascot testified as to $200.00 being a more reasonable figure. The Court agrees and hereby approves that amount as fair and reasonable.

5. B & G claims moneys under the following invoices in the following amounts for "equipment, material and the like to complete plaintiff's portion of the contracts": Invoice # 8381 in the amount of $2,900.00, Invoice # 8382 in the amount of $1,200.00 and Invoice # 8392 in the amount of $2,504.00. But B & G failed to present testimony as to the reasonableness of these charges. Moreover, Mr. Mascot gave specific reasons for disapproving each of these claims. Therefore, the Court finds that the claims are unsubstantiated and are disallowed.

6. B & G claims additional sums for materials employed on the project under Invoice # EL130 in the amount of $1,364.00, Invoice # EL131 in the amount of $2,199.00 and Invoice # EL132 in the amount of $3,740.00. B & G also claims

$4,887.00 for materials purchased from George Aho & Son, Inc. B & G has failed to present testimony in support of these claims. Furthermore, B & G has failed to explain why these amounts were not included in the earlier $24,816.90 claim for materials. The Court therefore disallows these claims.

7. B & G also claims $4,195.00 for discharge of plaintiff's mechanics' lien by the filing of a bond. This amount is disallowed, the Court finding that the recording of the mechanics' lien claiming sums due plaintiff was proper.[5]

8. B & G claims attorney fees of $5,986.00. This amount is also disallowed, the Court finding in its discretion that an award of attorney fees is not proper in the present case.[6]

The Court concludes that the proper amount of the setoff claim, for costs to complete, of B & G totals $61,758.59.

### III.

With regard to resolving this matter in terms of specific dollar amounts, the Court finds:

1. The base value of contract P240 is $93,222.00, plus $1,881.00 for change order # 1, for a total of $95,103.00. The base value of contract P246 is $264,520.00. The parties are in agreement as to these figures.

2. Under contract P240, B & G paid Fordson a total of $79,301.00. Under contract P246, B & G paid Fordson a total of $242,551.04. These figures are based on the testimony presented at trial, especially that of Laverne Lozen, office manager and bookkeeper for B & G.

3. Fordson is entitled to $13,689.39 for equipment in the field. B & G has not

challenged this figure in its proposed findings of fact and conclusions of law.

4. B & G admits it has received $50,-914.48 for extras performed by Fordson prior to its termination of the contract. Fordson is entitled to this amount, subject to the setoff rights of B & G.[7]

5. The setoff claim of B & G totals $61,758.59.

The Court therefore concludes that Fordson may recover $40,616.24 from B & G. The computations of the Court are as follows:

| Contract P240 | |
|---|---|
| Base Contract | $ 93,222.00 |
| Change Order # 1 | 1,881.00 |
| Total | $ 95,103.00 |
| Less Amount Paid | 79,301.00 |
| Amount Due | $ 15,802.00 |
| | |
| Contract P246 | |
| Base Contract Total | $ 264,520.00 |
| Less Amount Paid | 242,551.04 |
| Amount Due | $ 21,968.96 |
| | |
| Amount Due P240 | $ 15,802.00 |
| Amount Due P246 | 21,968.96 |
| Extras | 50,914.48 |
| Equipment in Field | $ 13,689.39 |
| Total Due to Fordson | $ 102,374.83 |
| | |
| Less Costs to Complete Allowed to be Setoff by B & G | $ 61,758.59 |
| | |
| Total Recovery of Fordson | $ 40,616.24 |

So ordered.

---

**5.** *See,* Opinion dated February 12, 1982.

**6.** MCLA 570.12 provided that the "court may, in its discretion, allow a reasonable attorney's fee when judgment shall be rendered in such proceeding, in favor of the parties succeeding therein".

**7.** Also subject to the setoff rights of B & G is the $31,377.30 B & G has or will receive as retainer.